JOHN J. THOMPSON, APPELLANT, VS. WILLIAM A. MAXWELL, APPELLEE.

1. A general demurrer to a bill, as for want of equity, will be overruled if there is any ground of equitable relief stated in the bill, even if there are any number of grounds of special demurrer.

2. Where, upon a foreclosure of mortgage, after decree and sale it is found that a portion of the lands described in the mortgage (a copy of which was annexed to the bill) were not properly described in the bill of foreclosure, a bill of review may be filed for the purpose of correcting the error in the bill and setting aside the decree and sale as to the land erroneously described; or setting aside the decree in *toto* if necessary, and obtaining a sale of the mortgaged lands.

3. An injunction should not be granted unless the bill contains a prayer therefor, nor should an injunction to stay proceedings at law be granted without bond and securities prescribed by statute, except in cases otherwise specially provided for by law.

4. A mortgagee cannot restrain the prosecution of a suit in ejectment (brought by a purchaser under a junior lien) against the mortgagor or his tenant.

5. A mortgage unrecorded or imperfectly recorded is valid as against creditors or subsequent purchasers with notice of the mortgage.

Appeal from the Circuit Court for Alachua county.

The facts of the case are stated in the opinion of the court.

*Thomas F. King* for Appellant.

*O. A. Myers* and *Fred. T. Myers* for Appellee.

THE CHIEF-JUSTICE delivered the opinion of the court.

This is an appeal from the orders of the Circuit Court for Alachua county overruling a demurrer to complainant's bill and granting injunction without requiring the security prescribed by law. By the bill it appears that Maxwell, appellee, was the mortgagee and holder of a mortgage executed by Charles P. Crawford to secure some ten thousand dollars and interest, dated October 25, 1870, on 1,860 acres of land in Alachua county, witnessed by J. J. Thompson, appellant, and " A. J. DaCosta, D. C.," and recorded December 26, 1870, by W. K. Cessna, Clerk, by " A. J. DaCosta, D. C." There was no formal certificate of the proof or acknowledgment put upon record, other than what may be deduced from the above memorandum. On June 23, 1873, formal proof of the execution of the mortgage was made before the Clerk by DaCosta as a subscribing witness and duly recorded.

In March, 1873, Thompson, obtained a judgment in the County Court of Alachua county for $119.11 against Crawford, the mortgagor, and levied the same on the lands described in the mortgage, which lands were sold by the sheriff June 2, 1873, to Thompson, the plaintiff in the execution, for ten dollars, the sheriff's deed being duly recorded July 12, 1873.

Thompson brought suit in ejectment against one Dupuis, the tenant in possession under Crawford the mortgagor, and on March 31, 1875, recovered a judgment in said action for the possession of the premises and for about $600 mesne profits. The time of the commencement of the ejectment suit is not stated in the bill.

Complainant filed his bill to foreclose his said mortgage August 30, 1873; obtained his decree November 4th, and the lands were sold to complainant January 5, 1874, and conveyed to him by sheriff's deed, recorded February 25, 1874.

The bill shows that the mortgage was deposited with the clerk for record and actually spread upon the records December 26, 1870; but alleges that the clerk by mistake endorsed upon the mortgage that it was recorded in December, 1871, instead of 1870.

It is also shown that one parcel of the land mortgaged, to wit: the "W¼ of section 1, T. 8 S., R. 18 E.," was erroneously and by mistake described in the bill of foreclosure, and all subsequent proceedings, including the sheriff's deed, as the " N¼ of section 1," &c. It is further alleged that complainant has not parted with the title of any of said lands so acquired under the foreclosure sale. The bill prays that the clerical error of the clerk in his endorsement of the date of recording the mortgage be reformed and corrected; that the error in the description of the lands as set out in his bill of foreclosure be corrected by amending the bill and other proceedings in accordance with the truth of the description, and that such proceedings may be had therein as may be proper to rectify the said decree and proceedings; and it being alleged in the bill in this cause that the defendant Thompson caused the levy to be made upon the mortgaged lands, and a sale and deed to be executed under his judgment for the purpose of overreaching and defrauding complainant; that the sheriff's deed to Thompson casts a cloud

upon the complainant's title; that Thompson is not a *bona fide* creditor or purchaser without notice of complainant's mortgage, but that said Thompson had notice and was a subscribing witness of said mortgage; that Thompson's "purchase was inequitable, unfair, for an inadequate price, and was manifestly secured by fraudulent collusion with other parties, or by the gross ignorance of the sheriff;" that no public notice of said execution sale was given as required by law; that the said sheriff's deed conveys no interest to Thompson as against the mortgage title; that the judgment in the ejectment suit against Dupuis for rents and profits, and for possession, was obtained more than thirteen months after complainant's purchase at the foreclosure sale, was contrary to equity and fraudulent, and yet he persists in claiming title and in taking possession of the lands; complainant thereupon further prays that the levy and sale under Thompson's execution be set aside and the deed annulled so far as the same covers the land embraced in the mortgage; that Thompson be enjoined from further proceeding with the judgment in ejectment or writ of possession under it, and from taking possession, or collecting the rents and profits of the premises, or the judgment recovered therefor, and that the sheriff deliver the quiet possession to complainant. Afterward the complainant amended his bill "by alleging that said defendant is now seeking by suit against J. D. Matheson, one of the sureties with Maxwell on a bond of J. Samuel Dupuis, to pay said debt in ejectment, which the complainant avers to be void as before stated in said bill, and complainant says that a judgment on said bond against said co-surety will be a judgment against complainant under the statute for contribution, whereas the complainant avers that the obligors on said bond are not bound thereby by reason of the facts set forth in said bill without *securing* (sic) the principal before there

has been a breach of said bond so far as complainant knows."

The defendant Thompson demurred on the general ground that "there is no equity in the bill."

Upon hearing the demurrer was overruled and defendant Thompson enjoined, as prayed, from proceeding with a suit of Thompson vs. Matheson "upon the appeal bond of J. S. Dupuis, principal, and W. A. Maxwell and J. D. Matheson, until the further order of the court, provided the complainant file his bond as usual in such cases with his own signature alone, without surety, within twenty days, for the sum of fifteen hundred dollars." Thompson was further enjoined from further proceeding to enforce or execute any writ of possession issued, or to be issued upon the judgment in ejectment until further ordered. No security was required upon the latter injunction. From these orders Thompson appealed, and seeks to reverse the same—1st, because the court erred in overruling the demurrer, and 2d, because the court granted the injunctions without requiring the complainant to give the bonds and securities prescribed by law.

I. It is a well settled rule that upon a general demurrer to a bill, if there is in the bill any good ground for equitable relief, the demurrer must be overruled, even if there are any number of grounds of special demurrer in the bill. Story's Eq. Pl., §443 ; Cooper's Eq. Pl., 112 ; Barb. Ch. Pr., 107, and citations.

This bill, as a bill of review, filed for the purpose of correcting the apparent errors in the decree and in the record in the foreclosure proceedings in the suit of this complainant against Crawford (which errors affect the vitality of the decree to a certain extent, and proceeding from an evident mistake and misadvertance in the description of the mortgaged property,) presents a case which entitles the complainant to equitable relief.

A bill of review lies after a final decree, (Story's Eq. Pl., 408, *a ;* 2 Barb. Ch. Pr., 93 ; Whiting, *et al.*, vs. Bank U. S., 13 Pet., 6 ; Putnam vs. Lewis, 1 Fla., 455 ;) and may be filed without leave of the court. 2 Dan. Ch. Pl. & Pr., 3 Am. Ed. 1633 ; 17 Ves., 178.

The bill may pray simply that the decree may be reviewed and reversed in the part complained of, if it has not been carried into execution. If it has been executed, the bill may also pray the further decree of the court to put the party complaining of the former decree into the situation in which he would have been if the decree had not been executed ; (2 Dan. Ch. Pl. & Pr., 1632–3 ; Story's Eq. Pl., §420 ;) and a supplemental bill may be added, if any event has happened which requires it, and particularly if a party not a party to the original suit becomes interested in the subject, he may be made a party to the bill by way of supplement. 2 Dan. Ch., *sup. ;* Price vs. Keyte, 1 Vernon, 135 ; Whiting vs. Bank, 13 Peters, 6.

In Millspaugh vs. McBride, (7 Paige, 509,) it was held by the Chancellor that where the complainant in a foreclosure had become the purchaser and had not parted with his interest, the decree might be opened by the court which pronounced it, where the error cannot be corrected by a rehearing or upon a bill of review.

A bill of review is in the nature of a writ of error, and its object is to procure an examination and alteration or reversal of a decree upon a former bill, which decree has been signed and enrolled. Story's Eq. Pl., §403, *et seq.*

The error in the decree complained of consists in the misrecital, by mistake, in the bill and subsequent proceedings, including the final decree and deed, of the description of a portion of the lands included in the mortgage, the bill erroneously describing the lands as the " N$\frac{1}{2}$ " of a section, whereas the mortgage described the land as the " W$\frac{1}{2}$," and this mistake is contained in the deed. This error may be cor-

rected by a bill of review which will set the parties right. The mortgagor should be duly summoned, if not appearing, to answer the bill, and upon a decree correcting the error in the bill of foreclosure, and in the decree of sale (vacating so much of the decree and the deed as relates to the erroneous description) there should be an order of sale of so much of the property as may be affected by the mistake, unless the mortgage is otherwise satisfied, or unless a defence against the facts set out in this bill be established according to the law and equity of the case. As there is equity in the bill, the demurrer was properly overruled.

It was proper to make the defendant Thompson a party to the suit, because he had, after the execution of the mortgage, become an incumbrancer and purchaser and had the sheriff's deed covering a portion of the mortgage lands, and it would not have been amiss if he had been made a party to the foreclosure suit in the first instance, as in that case the question of priority of lien could have been tried and determined.

II. The remaining ground, upon which the court is alleged to have erred, is that the injunctions were granted without exacting security as required by statute. The act of 1828, (Thomp. Dig., 454,) as amended by Chap. 526, laws of 1872, provides that no injunction to stay proceedings at law after verdict shall issue, unless the party applying shall previously pay the costs and enter into bond with two or more sureties to pay the amount of the judgment.

The act of 1861, Chap. 1098, authorizes the court to allow an injunction without security where the party shows that he is unable to give bond, and proves to the judge that the grounds of his action and the facts warranting an injunction are true as alleged in the bill. These statutes were not observed, but the injunction staying proceedings on the recovery in the ejectment suit was granted without sureties. But in addition to this fact, it does not appear that the com-

plainant, by his bill, prayed an injunction to restrain suit upon the bond of Dupuis, Matheson and complainant Maxwell, which is mentioned in the amendment of the bill. The statute is explicit that no injunction shall be granted in such case, unless the restraint is prayed for in the bill. (See also Story's Eq. Pl., §41.) The writs of injunction having been so granted, the one without the prayer and both without security, were granted improvidently. But this matter should be disposed of on other grounds apparent from this record.

The matter alleged as the ground of injunction to stay the action against Matheson on a bond, is not so clearly or sufficiently stated as to enable the court to see that it has any connection with the subject-matter of this suit.

We have quoted in the statement of the case the entire allegation of the bill as amended in respect to the ground of the injunction, from which it appears that Thompson has commenced a suit against Matheson upon a bond executed by him, with Maxwell, complainant, as sureties for Dupuis, to pay the damages recovered in the ejectment suit against Dupuis. But there is no good reason shown why the bond should not be prosecuted. No case is made by the complainant which entitles him to relief by injunction against the proceeding on the bond, if we understand the complainant's bill. Again, it appears from the bill (as we understand it) that complainant held a mortgage upon Crawford's land for ten thousand five hundred dollars, executed in December, 1870, which fact was known to Thompson, and, indeed, the mortgage was executed in his presence and attested by him. Subsequently Thompson sued Crawford and recovered judgment for $119 and sold the mortgaged land, and afterwards, upon the title derived from this sale, brought ejectment against Dupuis and recovered the lands and rents and profits. Thompson had an undoubted right, upon the facts stated, to sell Crawford's interest in the land, and as pur-

chaser, to recover possession from Crawford or his tenant and to recover mesne profits, for his title was good as against them. The mortgage raised no obstacle to the recovery. Thompson purchased in June, 1873. In August, 1873, complainant commenced the foreclosure of his mortgage, and in January, 1874, purchased the land on the foreclosure sale, and on the 25th February, 1874, procured his deed. Until this purchase he had no title, and was not in a condition to resist a suit for possession by Thompson. When this complainant seeks to recover possession upon his foreclosure deed, it is not probable that Thompson, as a *creditor and purchaser, with notice of the anterior mortgage*, will be able to defeat the complainant's title, according to the case stated in this bill. (Thomp. Dig., p. 180, Sec. 4.) Thompson's title upon a sheriff's sale on execution upon judgment junior to the mortgage, (of which he had notice, even though it may not have been properly recorded,) was probably a good title as against everybody, except a purchaser under the mortgage. Whether there was any collusion or fraud in the method of procuring his deed under his execution and judgment by Thompson, as is intimated in the bill, may be inquired of at the proper time, with proper parties before the court. The fact that this large quantity of land was bid in by Thompson under the execution sale for ten dollars, is not evidence of fraud on his part. He doubtless bid with reference to the mortgage and its possible consequences. There appears to be no ground for an injunction upon the facts charged in this bill.

Whether the execution of the mortgage in the presence of the recording officer, as one of the subscribing witnesses, is a sufficient authentication or proof of its execution before such officer to entitle the mortgage to record, it is not necessary now to examine.

The decree of the court overruling the demurrer is af-

firmed, and the orders allowing the several injunctions are reversed with costs.