SETH JOHNSON ET AL., APPELLANTS, VS. A. D. McKINNON, APPELLEE.

1. It is incumbent upon a complainant to allege in his bill every fact clearly and definitely that is necessary to entitle him to relief, and, if he omits essential facts therefrom or states such facts therein as show that he is not entitled to

relief in a court of equity, he must suffer the consequences of his so doing.

2. While a general demurrer to a bill, as for want of equity, will be overruled if there is any ground of equitable relief stated in the bill, even if there are any number of grounds of special demurrer, it is also true, in equity as at law, that a pleading is to be construed most strongly against the pleader.

3. A vendor's lien is that lien which in equity is implied to belong to a vendor for the unpaid purchase price of land sold by him, where he has not taken any other lien or security for the same, beyond the personal obligation of the purchaser. Such lien is not the result of any agreement between vendor and vendee, but is simply an equity raised by the courts for the benefit of the former, by whom it will be enforced or denied between parties, as the exigencies of each particular case may seem to require.

4 Every unpaid indebtedness for purchase money of real estate does not necessarily give to the grantor a vendor's lien, even though he has not taken any other lien or security for the same, beyond the personal obligation of the purchaser. Being created by inference alone and enforceable only in a court of equity, it is for such court to determine in each particular case whether the pleadings and proofs taken in their entirety warrant the court in creating and enforcing such a lien.

5. Such a lien may be implied in equity to belong to a vendor for the unpaid purchase price, even though such vendor, after having executed a contract of sale to the vendee, continues to remain in possession of the land so sold, such a lien being wholly independent of possession. but such a vendor is not entitled to treat the estate as his own. If he wilfully damages or injures it, he is liable to the purchaser; and more than that, he is liable if he does not take reasonable care of it.

6. It is also the duty of the vendor remaining in possession of lands, after having executed a contract of sale embracing them to the vendee, in addition to taking reasonable care of said lands, to pay all taxes which may be legally im-

posed thereon from time to time, unless the vendee has agreed to pay the same.

7. Since the adoption of the Revised Statutes, under section 1917 thereof, real estate descends to the heirs and an adminis trator has no right to the possession until an order of court has been made authorizing him to take possession thereof.

8 Where the bill of complaint discloses that the vendor re- mained in possession of lands, after having executed a contract of sale embracing them, and had not taken rea- sonable care thereof, but had neglected and failed so to do, having permitted the fencing and all other improvements thereon to virtually go to decay and the estate to depre- ciate in value every year, and had omitted to pay the taxes legally imposed thereon, and where the only relief prayed in such bill is for a decree against the administrator of the decedent, to whom the vendor had executed a contract for the sale of the lands, for the amount which might be found to be due upon said contract, for the appointment of a re- ceiver, and for general relief, it must be held that a court of equity is warranted in refusing to create and enforce a vendor's lien, at the instance of complainant.

9. He who comes into a court of equity must come with clean hands, and where the allegations of the bill taken in their entirety show that the complainant has been guilty of laches, as in the bill in this case, it was well open to attack by a general demurrer and the same should have been sustained.

10. Upon such a showing by complainant of his own negligence and omission it was also error to appoint a receiver.

11 The rule of procedure in giving deficiency decrees does not belong to a court of equity, unless specifically conferred by statute or a rule of court. Equity rule 89 provides for the entry of a deficiency decree only in suits for the fore- closure of mortgages, hence it was error to enter a defi- ciency decree in this case.

This case was decided by Division A.

Appealf or the Circuit Court from Jackson County.

*Jno. H. Carter* and *W. C. Butler,* for Appellants;

*D. L. McKinnon,* for Appellee.

## STATEMENT.

The appellee, A. D. McKinnon, filed his bill in equity in the Circuit Court of Jackson county on the third day of November, 1896, against Seth Johnson, Seth Johnson as administrator of the estate of P. P. Johnson, deceased, Caroline A. Johnson, H. L. Johnson, Emma, A. Coleman, Mary Brockway, Nancy Hysham, Orsa A. Johnson, Dave Johnson, Daniel Johnson and S. P. Johnson, who are the appellants in this court, alleging in substance therein as follows: That on the twenty-seventh day of February, 1893, the appellee and P. P. Johnson entered into an agreement in writing whereby appellant, for the consideration of $2,000 promised to be paid by the said Johnson, $400 of which was paid in cash, $1,000 was to be paid at Montgomery, Ala., between October 1st, and November 15th, 1893, in horses, on the same basis of prices as sold to L. H. Cawthon the previous year, and if appellee and said Johnson could not agree upon prices then the said Cawthon was to be the final arbitrator as to prices, and the balance of $600 was to be paid in money the first day of January, 1894, whereupon appellee was to make and execute to said Johnson a warranty deed to certain lands therein described and which were situated in the said county of Jackson, a copy of said agreement being attach-

ed to said bill as an exhibit; that shortly after the making of said agreement and after the making of the cash payment of $400, and before either of the other payments became due, the said Johnson died in Alabama, and Seth Johnson took out letters of administration upon the estate of the said P. P. Johnson in Alabama and qualified also as such administrator in Florida and entered upon the discharge of his duties as such; that all the appellants except Caroline A. Johnson, who was the widow, were the children and heirs at law of the said P. P. Johnson, and were the only heirs entitled to a distribution of the said estate; that said administrator frequently after his appointment promised to perform and carry out said agreement, but had wholly failed to do so, although appellee had always held himself out as being ready and willing to perform and had offered to perform his part of said agreement; that he in company with the said Cawthon had gone to Montgomery, Ala., between October 1st and November 15th, 1893, as the said agreement required, to receive from said administrator the horses that were to be delivered there, and had been put to considerable expense in making said trip, but said administrator did not have the horses there to deliver, which greatly injured and damaged appellee, as he had arranged to dispose of the horses to advantage and had so informed said administrator; that neither the said P. P. Johnson in his lifetime nor his said administrator since his death have tendered to said appellee said $1,000 worth of horses or any portion of them or paid or tendered payment of either of the two last mentioned payments in said agreement, though appellee had at all times since the making of same stood ready and willing and had offered to comply with his part of the same, and that he hereby tendered to the

heirs of said Johnson a good and sufficient warranty deed
to said described lands; that since the sale of said lands
appellee had paid the taxes thereon to prevent them from
being sold therefor; that the said Seth Johnson had paid
no attention to said plantation since it had come under
his charge; that the fencing and all other improvements
on said lands had virtually gone to decay; that the place
was not worth near as much as when sold to said P. P.
Johnson, and was yearly growing less valuable; that
there was no other property in the State of Florida, of
which appellee was aware, that would be subject to his
claim; that appellee believed that if the plantation was
looked after by some one some rent could be collected, suf-
ficient at least to pay the taxes, but that the said Seth
Johnson would not look after it and no one else was au
thorized to do so, and that appellee believed it was to the
interest of all parties for the court to appoint a receiver
to take charge of the case pending the suit, and rent the
same and pay the taxes thereon.  Said bill contained a
prayer that the court would order and decree that appel-
lee have and recoved from said Seth Johnson as adminis-
trator as aforesaid the balance due upon said agreement,
in money with interest thereon from the date it should
have been paid, together with all taxes which appellee had
paid upon said lands since the sale thereof, which appellee
claimed to be a lien on said lands, that a receiver be ap-
pointed to take charge of said lands pending the litiga-
tion, to look after repairs, rent the lands and pay the
taxes thereon, and said bill concluded with the general
prayer for relief.  To said bill was appended the affidavit
of appellee to the effect that the matters stated in said bill
were true of his own knowledge, except as to those stated
upon information and belief, and those be believed to be
true.

On the twelfth of December, 1896, the chancellor below made an order in said case, upon the application of appellee for the appointment of a receiver, appointing James C. McKinnon as such receiver to take charge of said plantation and lands, to collect any rents or money due for the use and occupation of any portion of said lands for the years 1894, 1895 and 1896, to rent and collect the same until the further order of the court, and to use so much of the rent as might be necessary to pay the taxes due and make necessary repairs. Said order required the receiver to make a full report of his acts and doings as such receiver annually to the court, and oftener if the court should direct, and also required the receiver to file with the clerk of the court a bond in the sum of $200 with two or more sufficient sureties.

The bond of the receiver was filed as required on the fourteenth of December, 1896.

The time for pleading was extended by agreement of counsel, and on the eighteenth of February, 1897, all the appellants filed a general demurrer to the bill of complaint, to the effect that the complainant had not in and by his said bill made or stated such a case as did or ought to entitle him to any such relief as was therein sought and prayed for.

On the nineteenth of February, 1897, appellants filed their answer to the bill, but what said answer contained we are not informed, as this case comes before us for consideration upon an abstract of the record, which does not set forth any of the averments in said answer or contain any summary thereof, but no exceptions have been filed to said abstract. Replication was filed to this answer on the first of March, 1897, by appellee. The cause was set down for hearing on the demurrer which had been filed to the bill, and on the tenth of April, 1897, the chan-

cellor below made an order overruling said demurrer.

It would seem that evidence was taken in the case, at least upon behalf of the appellee, but what said evidence was or to what effect, the abstract fails to disclose.

On the nineteenth of October, 1897, the cause came on for final hearing and the chancellor made an order or decree to the effect that appellee have and recover from the said Seth Johnson as administrator of the estate of P. P. Johnson, deceased, the sum of $2,123 damages, and the costs of the suit, to be taxed by the clerk of said court; that appellee had a vendor's lien upon the lands described in the bill of complaint, and which were described in said decree; that in default of the payment by said administrator of the amount so found to be due, within ten days from that date, said lands were to be sold in compliance with law, and James C. McKinnon was appointed a special master for that purpose.

On the sixth of December, 1897, said special master made and filed his report in the office of the clerk of said court to the effect that he had sold said lands in compliance with law, specifying the manner, which said sale resulted in said lands being sold to the appellee as the highest and best bidder for the sum of $410; that the total amount of costs was $53.71, amount of the decree $2,123, amount of interest on decree, $24.49, leaving a balance due, after deducting the $410, proceeds of the sale, of $1,791.20.

On the seventeenth of December, 1897, said chancellor rendered a final decree in said cause, in which he confirmed the report of sale and directed the execution of a deed by said special master to the purchaser of said lands, and also ordered and decreed that appellee have and recover from said Seth Johnson as administrator of the

estate of P. P. Johnson, deceased, the sum of $1,737.49, together with $53.71 as costs, and that execution issued therefor, to be levied and collected of the goods and chattles, lands and tenements of said P. P. Johnson in the hands of said Seth Johnson as said adimnistrator, as in other cases by law directed.

From this final decree appellants have entered an appeal to this court and have assigned the following errors: 1. The court erred in overruling the demurrer of defendants to the bill of complaint.

2. The court erred in rendering the decree of October 19th, 1897, decreeing a vendor's lien in favor of complainant for the sum of $2,123, principal and interest, under the allegations of the bill and the memorandum of agreement sued on providing that $1,000 of the $1,600 deferred payment should be payable in horses (and not money).

3. That the court erred in appointing a receiver (the decree of December 12th, 1896,) for the lands in controversy.

4. The court erred in rendering the deficiency decree of December 17th, 1897, against the defendant administrator for $1,737.49 and $53.71 costs, under the allegations of the bill, and the nature and extent of the relief sought by the prayer of the bill.

SHACKLEFORD, J. (after stating the facts,)

The first question presented for our consideration is, did the chancellor below err in overruling the demurrer to the bill? in answering this we must bear in mind that "a general demurrer to a bill, as for want of equity, will be overruled if there is any ground of equitable relief stated in the bill, even if there are any number of grounds

of special demurrer." Thompson v. Maxwell, 16 Fla. 773. Another principal to be considered is the rule that "a pleading is to be construed most strongly against the pleader." Herrin v. Brown, 44 Fla. 782, 33 South. Rep. 522. The onus being upon the appellee, who was complainant below, it behooved him to allege every fact clearly and definitely that was necessary to entitle him to the relief sought. Tested by these two principles, let us examine the allegations in the bill of complaint, so far as the same are disclosed by the abstract. In brief, we find that appellee and the decedent, P. P. Johnson, had made and entered into a written agreement or contract, whereby appellee agreed to convey by warranty deed to decedent certain described lands for a consideration of $2,000, of which $400 was paid in cash, $1,000 was to be paid in horses, and $600 in money, at certain times therein specified; that decedent died before either of said last payments became due, and Seth Johnson was appointed administrator of his estate; that neither of said last two payments have ever been made either by decedent or his administrator, though appellee has stood ready and willing at all times to comply with his part of said agreement, and has so notified said administrator. It does not affirmatively appear from the bill that the warranty deed called for by said agreement had ever been executed and delivered by appellee, or filed in court, therefore the legal title to said lands still remained in him. Was possession of said lands ever delivered by appellee to decedent or to his heirs or administrator? There is no allegation in the bill to that effect, and no intimation thereof other than the statement that "since the sale of said lands as aforesaid complainant has paid the taxes upon the same to prevent its being sold for taxes;" that "said Seth Johnson has paid no attention to said plantation

since it came under his charge, and the fencing and all other improvements have virtually gone to decay," and that the place is yearly depreciating in value; and that "said Seth Johnson will not look after it, and no one else is authorized to do so." Are these intimations or statement a sufficient allegation that possession of said lands was ever delivered by appellee to decedent, his heirs or administrators? We think not. The law makes it the duty of the owner of lands to pay the taxes legally imposed thereon from time to time, and, so far as it has been made to appear, the fact that the taxes were not paid upon the lands in question was due to the negligence or omission of the appellee, he being the legal owner thereof, and, so far as is disclosed by the bill, the decedent never having agreed to pay said taxes and the duty so to do not having been cast upon him by law. If, then, it was the duty of appellee to pay said taxes, and we must so hold, in the absence of any allegation to the contrary, he could not be permitted by his failure to pay said taxes to lay the basis for a suit against appellants. How did it become the duty of Seth Johnson to look after said lands, and how was it that no one else was authorized to do so? As we have just seen, no deed was ever executed by appellee to these lands to decedent, and there is no allegation that the possession thereof was ever surrendered by appellee to decedent or anyone else. Even if a deed had been executed to decedent or the possession delivered to him, his administrator had no right to take possession until an order of court had been made authorizing him to do so. Said real estate would have descended to the heirs of the said decedent. Rev. Stats Sec. 1917. Therefore, the said Seth Johnson as administrator was not entitled to the possession of said lands, and it was not his duty

as such administrator, nor was he authorized by law, to take charge of and look after same. As one of the heirs of said decedent it was no more his duty and he was no more authorized to look after it than any of the other heirs, it being alleged in the bill that all of said heirs were over the age of twenty-one years. So far as it was made to appear from the bill, the fact that the fencing and all other improvements upon said lands had gone to decay and the place was yearly depreciating in value was due to the negligence and omission of appellee in caring for same. This then could not form the basis for a suit against appellants, any more than the failure of appellee to pay the taxes could do so. The maxim *nullus commodum capere potest de injuria sua propria,* applies. If, as we have said above, it is incumbent upon a complainant to allege in his bill every fact clearly and definitely that is necessary to entitle him to relief, and he omits essential facts therefrom or states such facts therein as show that he is not entitled to relief in a court of equity, he must suffer the consequences of his so doing. We recognize the fact, as stated in 2 Warvelle on Vendors, Sec. 676, in speaking of a vendor's lien, that "it may well be doubted whether any subject connected with the American law of real property is involved in more serious dispute as to its character and operation or uncertainty in respect to the methods of its application. Courts seem to have found it difficult to assign any justifiable basis on which it rests, and differ widely as to the grounds for its introduction into the jurisprudence of this country. In its general features it is contrary to the policy of our laws, which look with disfavor upon secret interests in real property or any procedure which tends to nullify or impair titles as shown upon the public records, and for these reasons the doctrine has been repudiated by courts

of a few States, and abrogated by legal enactment in oth·
ers." However, the lien of a vendor on lands for the pur-
chase money and his right to seek the enforcement of
same by appropriate proceedings in a court of equity was
recognized in this State in Bradford v. Marvin, 2 Fla. 463,
and has been reiterated in a number of subsequent cases.
As was said in McKeown v. Collins, 38 Fla. 276, 21 South.
Rep. 103, "a vendor's lien is that lien which in equity is
implied to belong to a vendor for the unpaid purchase
price of land sold by him, where he has not taken any oth·
er lien or security for the same, beyond the personal ob-
ligation of the purchaser. Such lien is not the result of
any agreement between vendor and vendee, but is simply
an equity raised by the courts for the benefit of the for-
mer." And, in accordance with the principle laid down
in 2 Warville on Vendors, Sec. 676, stating that a ven·
dor's lien "being created by inference alone, it is in effect
a mere equity raised and administered by the courts, by
whom it will be enforced or denied between parties, as
the exigences of each particular case may seem to require,"
this court further stated in McKeown v. Collins, *supra*,
that "every unpaid indebtedness for purchase money of
real estate does not necessarily give to the grantor a
vendor's lien." It would further seem, as remarked by
Mr. Warville, to be "wholly independent of possession,"
but, if the vendor, after having executed a contract of
sale to the vendee, continues to remain in possession of
the lands so sold, he is not entitled to treat them as his
own. As was said by Sir George Jessel, M. R., in Lysaght
v. Edwards, L. R. 2 Ch. Div. 499, 506, 507, cited with ap·
proval by Mr. Pomeroy in the third volume of his Equity
Juris., section 1260, latter part of note 1 on p. 1942.
"being a valid contract, it has this remarkable effect, that

it converts the estate, so to say in equity; it makes the purchase money a part of the personal estate of the vendor, and it makes the land a part of the real estate of the vendee; and therefore all those cases on the doctrine of constructive conversion are founded simply on this, that a valid contract actually changes the ownership of the estate in equity. This being so, is the vendor less a trustee because he has the rights which I have mentioned? I do not see how it is possible to say so. If anything happens to the estate between the time of sale and the time of completion of the purchase, it is at the risk of the purchaser. If it is a house that is sold, and the house is burned down, the purchaser loses the house. In the same way there is a correlative liability on the part of the vendor in possession. He is not entitled to treat the estate as his own. If he wilfully damages or injures it, he is liable to the purchaser; and *more* than that, he is liable if he does not take reasonable care of it." Now in the case under consideration it affirmatively appears from the bill that appellee neglected and failed to "take reasonable care" of the lands embraced in said contract and sought to make his own negligence and the fact that he had paid the taxes thereon, the same being properly assessable to him, he being the legal owner and in possession thereof, and, as we have just seen the law making it his duty to pay them, the basis of his suit against appellants. Upon his own negligence and omission he seeks the appointment of a receiver. We also note in passing that in his bill appellee did not pray for the enforcement of any lien upon the lands, or, in fact, seek their sale at all, contenting himself with a prayer for a decree against the administrator for the amount which might be found to be due him upon said agreement, for the appointment of a re-

S. C. 25

ceiver and with a prayer for general relief. Did he make or state such a case in his bill as to give a court of equity jurisdiction or to entitle him to the relief prayed? Bearing in mind that he who comes into a court of equity must come with clean hands, we must answer this question in the negative. In our opinion, the bill was well open to attack by general demurrer and the same should have been sustained. The allegations in the bill taken in their entirety did not warrant a court of equity in creating and enforcing a vendor's lien upon the lands in question at the instance of appellee. It follows from what has been said that the other errors are well assigned, but, in view of the conclusion reached, we do not deem it necessary to discuss them. We would call attention to the fact, however, that we know of no authority for entering a deficiency decree in actions to enforce vendor's liens. As we understand it, the rule of procedure is giving deficiency decrees does not belong to a court of equity, unless specifically conferred by statute or a rule of court. Webber v. Blanc, 39 Fla. 224, 22 South. Rep. 655. Equity rule 89 provides for the entry of a deficiency decree only in suits for the foreclosure of mortgages.

The decree must be reversed, with directions to sustain the demurrer of the defendants below to the bill, and for such further proceedings as may be in consonance with equity practice and not inconsistent with this opinion, the appellee to pay the costs of this appeal.