SAMUEL C. PINNEY, *Appellant*, v. LAURA F. PINNEY, *Appellee*.

1. In equity, as well as at law, a pleading is to be most strongly construed against the pleader thereof.

2. It is incumbent upon a complainant to allege in her bill every fact, clearly and definitely, that is necessary to entitle her to relief; and if she omits essential facts therefrom, or states such facts therein as show she is not entitled to relief in a court of equity, she must suffer the consequences of her so doing.

3. It is an established rule of chancery practice, and of pleading and practice generally, that the *allegata* and *probata* must correspond. However full and convincing may be the proof as to any essential fact, unless the fact is averred, proof alone is insufficient. All the evidence offered in a case should correspond with the allegations and be confined to the issues.

4. Charges of fraud must be specific, and to avail anything they must be proved if denied. Evidence of other acts of fraud than those alleged in the bill can not avail the complainant.

5. Special replications to answers in chancery should not be filed but by leave of the court or judge thereof for cause shown. However, if such special replication is filed without such leave, it is proper to treat it as a general replication. Neither is it necessary or customary for replications to answers in chancery to be filed under oath.

6. When a replication is filed to an answer it thereby puts in issue all the matters alleged in the bill and not admitted in the answer, as well as those matters contained in the answer which are not responsive to the bill.

7. When the answer concludes with the usual general denial found in such a pleading, it is sufficient to make an issue on material allegations in the bill not admitted in the answer and to which no especial response is made. Such statements can not be taken as admitted to be true, but must be proved by at least a preponderance of the testimony.

8. Matters set up in the answer which are not responsive to the bill, as matters set up by way of avoidance, must be proved by the defendant, and the burden is upon him to establish such matters by a preponderance of the testimony.

9. A sworn answer denying the allegations in the bill which are essential to sustain the case of complainant and entitle her to relief is evidence in favor of defendant and conclusive, unless

overcome by the testimony of two witnesses, or of one witness corroborated by other circumstances which are of greater probative weight than the answer, provided that the oath to the answer has not been waived and the answer is directly and positively responsive to the material allegations of the bill.

10. No objection will be allowed to be taken in the appellate court to the admissibility or competency of any testimony, oral or documentary, found in the record as evidence in a chancery cause, unless the record affirmatively shows that the objection thereto was presented to the chancellor, and expressly ruled upon by him in the court below at or before the final hearing of the cause.

This case was decided by Division A.

Appeal from Circuit Court for Escambia county.

### Statement.

The appellee filed her bill in chancery in the Circuit Court of Escambia county on the 26th day of January, 1898, against appellant, alleging in substance therein as follows: That on the 11th day of December, 1890, John Pinney, the father of appellee, by deed, conveyed to appellee, in consideration of natural love and affection and a further consideration of one dollalr, in fee simple, certain real estate situated in the county of Santa Rosa, State of Florida, which is particularly described in the said bill; that subsequently to the conveyance from her father of said land appellee became and was very sick and broken down in health, and unable to manage and control said property, and it, therefore, became necessary to employ some person of experience to manage and control the same for her, and, therefore appellee placed said property under the management and control of appellant, who was her nephew, because she considered him a person qualified to undertake the management and control thereof, and because of the relationship existing between them, and the high confidence which appellee reposed in appellant and the love and regard which she felt for him; that, subsequent to the placing of

said property in the hands of appellant for the purposes and
reasons aforesaid, appellee authorized appellant to sell the
said property for her, and, after so authorizing him to sell
the same, appellee became and was extremely sick and was
advised and believed she could not possibly recover from
the disease with which she was then suffering, and that
she would not live for a very long period of time; that,
believing she would not live for a long period of time, and
because of the natural love and affection which she felt for
her widowed sister-in-law, Clara Pinney, and the said Clara
Pinney's children, one of whom was appellant, appellee
authorized appellant to prepare or cause to be prepared a
will for appellee to execute, wherein there was to be con-
tained "a bequest" of one-half interest in said property to
the said Clara Pinney and her children, of whom appellant
was one; that, contrary to said instructions of appellee,
with the intent to defraud appellee during her lifetime and
deprive her of the absolute title to said property, and to
defraud his mother, brothers and sisters of any future inter-
est in said property that they would have come into the
possession of at the death of appellee, in accordance with
the terms of the will which was to be prepared as directed
by appellee, and for the purpose of vesting in him, appellant,
the absolute title to said property, appellant "intentionally,
knowingly and fraudulently had prepared, with the intent
to defraud, without the knowledge and consent" of ap-
pellee, "and contrary to her instructions and request, a
certain paper or deed" conveying to appellant, in considera-
tion of natural love and affection and a further considera-
tion of one dollar, the fee simple title of all the property
conveyed to appellee by her father; that at the time said
deed had been so prepared by appellant, appellee was very
sick and feeble in body and mind and unable to attend to
any business whatever, being confined to her home by said
sickness, at which place and during her said physical de-
bility, appellant brought the said paper and requested ap-
pellee to sign same; that appellee hesitated in so doing and

refused to sign same because as she then informed appellant, the said paper was not a will, or did not have the appearance of a will, and was, therefore, not the instrument she desired to execute; that thereupon appellant informed appellee that although said paper was not a will, it had the same legal effect, and that appellee could more effectually grant the property to those to whom she intended it to go in the event of her death by the execution of the paper which appellant had prepared for her; that thereupon appellee, because of the implicit confidence she had and reposed in the appellant, and without having first read or having read to her the said paper, and not considering it necessary that she should have it read and explained to her, and relying upon the honesty of appellant, appellee signed and executed the said paper in the presence of Mary Martin and J. J. Hooton, neither of whom had the paper read in their presence while appellee was present with them; that subsequent to the execution of said paper by appellee, appellant and appellee had several conversations, in which appellee urged appellant to sell said property for her, the appellee, and, as an inducement for appellant to make every effort to make an early sale of same, appellee informed appellant that she was very much in need of money, and that appellant always promised appellee to do this, and otherwise conducted himself as if the title to said property was vested in appellee; that appellee never intended to dispossess herself of said property during her lifetime, and always believed and had reason to believe subsequent to the execution of the paper so prepared by appellant that the title still remained vested in her, and did, therefore, try to sell said property herself and through the agency of other persons acting in her behalf exclusively; that subsequent to the execution of the paper so prepared by appellant and the conversations had between appellee and appellant and appellee's efforts to sell said property herself and through the agency of other persons acting in her behalf exclusively, appellee was very much surprised to learn that the paper

so executed by her to appellant was a deed and conveyed in fee simple all the property therein described to appellant, and that said instrument was not of the same effect as a will, as knowingly and fraudulently alleged by appellant; that "a short while ago" appellee was very much surprised at being informed that appellant and his wife had, for and in consideration of the sum of $5,000, conveyed to G. Parodi all the said property so granted to appellee by her father; that appellee immediately commenced an investigation of said rumors and ascertained that the same were true, and that the appellant and his wife did transfer, on the 30th day of July, 1896, for said consideration, the title in fee simple to the said G. Parodi, and that the said G. Parodi was the *bona fide* purchaser of said property for value without notice; that appellee then for the first time "discovered and was convinced" that the said paper executed by appellee to appellant on the 23rd day of March, 1891, and which appellant had informed her had the same effect as a will and would transfer only that property which appellee desired to leave to the said Clara Pinney and her children, in the event of appellee's death, did not have the same legal effect claimed by appellant, as he had advised appellee prior to its execution, and which was the inducement held out to her to cause, and did cause, her to execute the same, but had the legal effect of divesting appellee of all her interest, right and title in and to said property and of vesting the entire and exclusive interest in the same in the appellant, and not in the persons whom appellee desired should have a part or interest in one-half of said property at appellee's death; that appellant was informed and knew at and before the execution of the said instrument to him by appellee, which was executed at his instance and request, that the legal effect of said instrument was to deprive appellee of her title to said property and vest the same in him, the appellant, and all benefits to be derived therefrom and belonging thereto; that appellant made the said statement or statements to appellee, prior to the execution of said

writing by appellee, with full knowledge that the same were false and untrue, and with the intent to defraud, and did defraud, appellee of her said property and all benefits derived therefrom and belonging thereto; that appellee was informed that she had no remedy for the recovery of said property against the said G. Parodi, for the reason that he purchased the same from appellant in good faith and without knowledge of the fraud committed by appellant; that appellant had collected the full amount of the purchase price for said property and had not, as he was in duty bound to do, paid over the said amount so collected, or any part thereof to appellee, but, on the contrary, and in furtherance of his fraudulent designs first had and conceived before the execution of the paper to him by appellee, had fraudulently retained possession of said purchase money, and had fraudulently, or would fraudulently, convert the same to his own private use, benefit and gain; that appellant had refused to give appellee a statement of the amount realized by him from said sale and had denied that appellee was entitled to said amount, although appellee had repeatedly made demand of appellant for a statement relative to said sale and the amount realized therefrom, and had demanded of appellant that he pay to her, appellee, said amount, but that appellant had not furnished appellee said statement, or paid to her the amount demanded, to which she was justly entitled, but still wilfully and fraudulently retained the same and refused to pay appellee any amount and denied that she was entitled to said amount or any part thereof, claiming that the amount of money so realized from the sale of said property belonged entirely to him, appellant. The prayer of the bill was for an accounting, that appellant might be decreed to be a trustee of the purchase price received by him for said land for the benefit of appellee and might be decreed to pay the amount of said purchase price to appellee, or whatever sum might appear to be due her upon the taking of an account, and for general relief and for process.

On the 7th day of March, 1898, appellant filed his answer to the bill, in which he admitted the execution of the deed to appellee by her father, but averred that the same was made through the part procurement of appellant; that prior to the making of said deed appellee had often said that she thought it fit and proper and that she intended that some provision should be made for Clara Pinney and her children by providing means for building a home for them, as the other children of appellee's father had been materially aided by him, his son, Samuel L., however, having died long before, leaving a widow and five children, of whom appellant was one, all of whom were minors at the time of his said father's death, and appellant being barely of age at the time of the making of the deed to appellee by her father and the other children being still minors, and that no material aid had ever been received by the said Samuel L. Pinney in his lifetime from his father; that it was understood and agreed between appellant and appellee that John Pinney, the father of the appellee, should be procured to make a deed to appellee, and that she should immediately thereafter dispose of the land conveyed to her therein, in order that a house might be built for the mother of appellant and her children, and that the said deed from the said John Pinney to appellee was procured for the purpose aforesaid and no other purpose. Appellant denied in his answer that subsequent to the conveyance to appellee from her father she became sick and broken in health, but averred that her health was during said period no better and no worse than it had been for years theretofore, and thus it had been for years since that time; appellant denied that appellee had employed him to manage and control the said property for *her,* or in her stead; averred that he received no compensation from appellee, and was to receive none; that the property remained in the name of appellee for only two or three months, as was shown by the dates of the deeds attached to the bill, during which time such care and attention as was bestowed by appellant upon it was because of the understanding had

between him and appellee that the property should be sold immediately in order that a house might be built for the mother of appellant and her children, including appellant; that appellee was not able to sell said property immediately, finding no purchaser and knowing of no prospective purchaser therefor, and that shortly afterwards appellee, in order to protect appellant and to secure said land to him, as was mutually understood, instructed appellant to prepare a deed for the conveyance of said land to him; that it was true that, between the time of the deed to her from her father and the execution of the deed from appellee to appellant, appellee had authorized appellant to sell said property, but that such sale was to be made for the benefit of appellant, his mother, brothers and sisters, in accordance with the understanding between appellant and appellee; that it was not true that appellee became and was extremely sick or was any sicker than she had been for years theretofore, and had been for years since; that it was not true, so far as any communication between appellant and appellee that would have led appellant to believe that appellee ever intended to make a will of one-half of said property for the benefit of appellant, his mother, brothers and sisters jointly, or that appellee ever authorized appellant to prepare a will for that purpose, or to that effect; that it was true appellant had prepared a deed conveying to him the fee simple title to said property, but that said deed was in exact accordance with the instructions given him by appellee, and in exact accordance with the understanding which had existed between appellee and appellant, and in exact accordance with the intent of appellee as theretofore frequently expressed, as expressed at the time of making said deed, and as thereafter frequently expressed; that it was not true that appellee was at said time very sick and feeble in body and mind, and unable to attend to any business whatever, and confined by her sickness to her home; that it was true that said deed was taken to her home for the purpose of taking appellee's acknowledgment thereto, but that the signature of such

papers by ladies at their own home is frequent, even though
they be in sound physical and mental health; that it was
not true that appellee hesitated to sign said deed, or if she
did so hesitate, there was no indication of it to appellant
or those persons present at the time of such signing; that it
was not true that appellant informed appellee that said deed
was the same in legal effect as a will, and that she could
more effectually grant the property to those to whom she
intended it should go in the event of her death by the execu-
tion of the said paper; that appellant could not state whether
appellee read said paper, or had it read to her at said time,
but that it was explained to her fully what it was; that she
knew what she was signing and that it carried out fully her
intent in the making thereof, and that it was in accordance
with the understanding and intention hereinbefore men-
tioned; that it was not true that after the execution of said
deed appellee ever urged appellant to sell said property for
her, or that appellant ever promised so to do, or that he ever
conducted himself as if the title to said property was vested
in appellee; that appellant was unable to say what was the
concealed intention of appellee in executing said deed, but
that her expressed intention at all times was to vest the title
to said property in appellant, for the purposes hereinbefore
set forth; that it might be true that appellee tried to sell
said property herself, and through the agency of other per-
sons acting in her behalf exclusively, but that it was also
true that appellee tried to sell said property for and on
behalf of appellant, and for the purpose of assisting in
carrying out the design of said conveyance, the purchase of
a home for appellant, his mother, brothers and sisters; that
it was not true that appellee was at any time after the exe-
cution of said deed surprised to learn that it was a deed
and conveyed in fee simple to appellant the property there-
in mentioned, because appellee knew that fact at all times,
and the fact was in accordance with her intention in making
said instrument; that it was true that appellant, at the time
mentioned, conveyed two-thirds of said property to said

G. Parodi, the other one-third being conveyed by the heirs of Richard L. Campbell, who were entitled to the said one-third and who received one-third of the consideration of $5,000, leaving as the sum realized by appellant the sum of $3,333.33 1-3; that it was not true that appellee, after the execution of said deed to said Parodi, for the first time discovered that the paper executed by her on the 23rd day of March, 1891, was a deed to appellant for said property, because, as hereinbefore set forth, appellee had known such fact at all times, at and after the execution of said deed, and that such execution was in accordance with her previously formed intent, and with the understanding between her and appellant; that it was not true that any statements made by appellant to appellee, before, at or after the execution of said deed, were false and untrue, or otherwise than true; that appellant was advised and believed that appellee had no remedy against said G. Parodi, and that appellant was also advised and believed that appellee had no just remedy against him, the appellant; that it was true that appellant had collected the full amount of two-thirds of said property from the said G. Parodi, amounting to the sum of $3,333.33 1-3, and that it was true that he had not paid over the said amount so collected, or any part thereof, to appellee, but that appellant retained the same; that appellant was about to invest the same in a home for himself, his mother, brothers and sisters, when he was informed by appellee, and otherwise heard, that appellee was going to bring suit for the purpose of holding appellant personally responsible for said amount, when as a matter of prudence, appellant decided not to build said house until after the controversy with appellee had ended, and since that time he had retained said money and had loaned it out at interest; that it was true that appellant had refused to account to appellee, or to pay her any sum of money whatever, because, as hereinbefore set forth, appellee was not entitled to an account from him, or to any payments of any sums to her by him; that appellant denied that there had ever been any demand

upon him by appellee for the return of said money, or for the payment of any part thereof to her, except that she had demanded of him the payment of the sum of $1,000. Said answer also contained the usual general denial found in such a pleading, and was sworn to by appellant, the oath not having been waived in the bill.

On the 4th day of July, 1898, appellee filed a *special* replication to the answer under oath.

The testimony of the witnesses for appellant and appellee was taken before a commissioner in writing, there being in all some twenty witnesses and said testimony being quite voluminous. Many objections were interposed by the solicitors for the respective parties to certain testimony, and a written agreement was also entered into and filed by said solicitors to the effect that it should not be necessary to file formal exceptions to the testimony objected to by them during the taking thereof, but that all objections which were made by them or either of them during such taking might be availed of at the final hearing by the counsel and should be considered by the court as if formally excepted to at or before the hearing. However, it is not affirmatively disclosed by the record that any of said objections were presented to the chancellor, and expressly ruled upon by him in the court below, either at or before the final hearing of said cause.

We deem it unnecessary to set forth said testimony in detail or to refer to it here, but shall make such references thereto in the opinion as may seem necessary or advisable for a proper understanding of the case and the conclusions which we have reached.

On the 2nd day of March, 1900, a final decree was rendered in said cause, in which it was recited that it had been agreed by the respective parties that appellant, since his acquisition of the land in controversy had expended on account thereof the sum of $58.60 for taxes and for the removal of trespassers thereon and that the same should be taken into account in said cause without further plead-

ing, and it was adjudged, ordered and decreed that appellant was declared to be a trustee for and in behalf of appellee of one-half of the sum of money obtained by him from the sale of said property, together with interest, the said one-half and interest being the net sum of $2,105.99, and that appellant should relinquish and pay to appellee the said sum of $2,105.99, after having deducted therefrom one-half of the amount of the expenses incurred by him, said one-half of said expenses amounting to the sum of $29.30, and that appellant should also pay the costs in said cause.

From this final decree appellant has entered an appeal to this court, and has assigned the following errors:

(1) The court erred in adjudging any sum whatever to the complainant against the defendant.

(2) The court erred in adjudging the sum adjudged by said decree to the complainant.

(3) The court erred in not dismissing the said bill of complaint.

*Blount & Blount* for appellant.

No appearance for appellee.

SHACKLEFORD, J. *(after stating the facts).*—This is another "of the many cases in this court wherein we are left to make an independent investigation for authorities in support of the judgment of the court below, without the aid of a brief or argument on the part of the appellee," and again we call attention to the language used by this court in *Chamberlin v. Lesley*, 39 Fla. 452, text 456, 22 South. Rep. 736.

An examination of the bill discloses the fact that it is not very artificially drafted, some of the allegations therein being confused and contradictory. It is well settled by this court, that in equity, as well as at law, a pleading is to be most strongly construed against the pleader thereof. *Rich-*

*ardson v. Gilbert,* 21 Fla. 544, text 547; *Herrin v. Brown,* 44 Fla. 782, 33 South. Rep. 522; *Johnson v. McKinnon,* 45 Fla. 388, 34 South. Rep. 272; *Stockton v. National Bank of Jacksonville,* 45 Fla. 590, 34 South. Rep. —. It is incumbent upon a complainant to allege in his bill every fact, clearly and definitely, that is necessary to entitle him to relief; and if he omits essential facts therefrom, or states such facts therein as show that he is not entitled to relief in a court of equity, he must suffer the consequences of his so doing. *Johnson v. McKinnon, supra; Stockton v. The National Bank of Jacksonville, supra.* "It is also an established rule of chancery practice, and of pleading and practice generally, that the *allegata* and *probata* must correspond. However full and convincing may be the proof as to any essential fact, unless the fact is averred, proof alone is insufficient. All the evidence offered in a case should correspond with the allegations and be confined to the issues." *Tate v. Pensacola, Gulf, Land & Development Co.,* 37 Fla. 439, 20 South. Rep. 542; *Lyle v. Winn,* 45 Fla. 419, 34 South. Rep. 158; *Stockton v. The National Bank of Jacksonville, supra; Smith v. Guckenheimer,* 42 Fla. 1, text 36, 27 South. Rep. 900; *Anderson v. Northrop,* 30 Fla. 612, 12 South. Rep. 318; *St. Andrews Bay Land Company v. Campbell,* 5 Fla. 560; *Phelan v. Phelan,* 12 Fla. 449, text 467; *McKinney v. County Com'rs of Bradford County,* 26 Fla. 267, text 273, 4 South. Rep. 855; *Thornton v. Campbell's Executors,* 6 Fla. 546.

As noticed in the statement preceding this opinion, a *special* replication was filed under oath by appellee to the answer, although *special* replications have been expressly abolished in this State by equity rule 66. It is true that section 1423 of the Revised Statutes provides that a special replication to an answer may be filed by leave of the court or judge thereof for cause shown, but it does not appear that any such leave was sought or obtained or that any cause therefor existed. Neither is it necessary or customary for replications to answers to be filed under oath. However,

said special replication was properly treated by the parties and the court below as a general replication, and we shall so treat it here. See *Shaeffer v. Weed,* 3 Gilm. (Ill.), 511; 1 Brack Mod. Eq. Pr., sec. 473. When a replication is filed to an answer it thereby puts in issue all the matters alleged in the bill and not admitted by the answer, as well as those matters contained in the answer which are not responsive to the bill. *Stackpole v. Hancock,* 40 Fla. 362, text 380, 24 South. Rep. 914; 18 Ency. of Pl. & Pr., 683; *Hume v. Scruggs,* 94 U. S. 22; *Smith v. St. Louis Mutual Life Ins. Co.,* 2 Tenn. Ch. 599. When the answer concludes with the usual general denial found in answers in chancery, as does the answer in the instant case, this is sufficient to make an issue on material allegations in the bill not admitted in the answer and to which no response is made. Such statements can not be taken as admitted to be true, but must be proved by complainant, though it is not required that they be proved by the amount of testimony required to overcome a sworn responsive answer, but they must be established by at least a preponderance of the testimony. *Stackpole v. Hancock, supra;* 1 Ency. Pl. & Pr., 930, b. Matters set up in the answer which are not responsive to the bill, as matters set up by way of avoidance, must be proved by the defendant, and the burden is upon him to establish such matters by a preponderance of the testimony. *Orman v. Barnard,* 5 Fla. 528; *LaTrobe v. Hayward,* 13 Fla. 190; *Humes v. Scruggs, supra.*

It is also a well-settled principle in this State that "an answer responsive to the bill denying the allegations therein is conclusive upon that question, unless overcome by the testimony of two witnesses, or of one, with corroborating circumstances," provided said answer is under oath, the oath thereto not having been waived in the bill. *Stephens v. Orman,* 10 Fla. 9; *Carr v. Thomas,* 18 Fla. 736; *Foster v. Ambler,* 24 Fla. 519, 5 South. Rep. 263; *Kellogg v. Singer Manuf'g. Co.,* 35 Fla. 99, text 105, 17 South. Rep. 68; *Day v. Jones,* 40 Fla. 443.

An examination of the bill and answer discloses the fact that almost every material allegation in the bill is expressly denied in the answer. Has the effect of the answer as evidence been overcome? We think not. The specific fraud alleged in the bill is the dishonest and untrue representation made by appellant for his own benefit that the deed executed to him by appellee was, in legal effect, the same as a will. This is the essence of the bill and forms the basis of appellee's claim. This allegation is expressly denied in the answer, and the evidence signally fails to sustain it. The appellee herself did not so testify. She testified that she asked appellant when he came to her house in company with Mr. Johnson Hooton, who became one of the subscribing witnesses to the deed and also took the acknowledgment of appellee thereto, if he had brought the paper for her to sign, and he replied yes, and she signed it. She further testified that although she read only a few lines of the paper, she discovered that it was a deed. When she remarked to the said Hooton "this is not a will; it is a deed," and he replied "Miss Laura, you had better let it remain this way, as there is so many technicalities in wills;" that at the time appellant "was sitting up in the window, *but made no reply* whatever;" that appellee took the paper out of the room to get a Mr. Porter to witness it, who, however, refused to do so because it was a deed instead of a will; that she made no reply to Mr. Porter because she already knew it was a deed, but returned to the room and told Mr. Hooton that Mr. Porter refused to sign it, whereupon appellant requested said Hooton to sign it, who did so; that she said she was willing for it to remain that way if it was not recorded. There is no testimony that appellant agreed not to record the deed. Appellee herself did not so testify, and the only other testimony in addition to that of appellee, that she made the statement above in regard to not putting the deed of record is that of J. H. Porter, who says he heard appellee so tell appellant, but appellee herself says Porter was not present in the room at the time she told appellant not to

record the deed. Both the appellant and the said Hooton testified positively that no request was made by appellee of appellant to withhold the deed from record. The record discloses the fact that the deed from appellee to appellant was recorded on the 20th day of May, 1891, and Miss Mary Martin, one of the subscribing witnesses to said deed, testified that about nine or ten days after the deed was executed she was informed by Mrs. Clara Pinney that the deed had been recorded, and that she, Mary Martin, so informed appellee. Miss Clara Pinney testified that shortly after the deed was executed she was present at a conversation which took place between her mother and appellee, during which her mother informed appellee that the deed had been recorded at Milton, and appellee remarked she was glad it had been recorded at Milton instead of Pensacola. Miss Martin also testified that on the same day the deed was executed appellee told her that the deed to appellant covered the Garcon land. Eight different witnesses, S. C. Pinney, J. J. Hooton, Miss Mary Duncan, Irene M. Pinney, Lydia Pell, H. B. Pinney, Clara Pinney and Lavinia Scott, testified that at different times, running through a period of years, after the date of the execution of the deed, appellee had made admissions to them, against her interest, that she had given the land to appellant, and that it was in accord with her intentions. And yet not for nearly seven years after the deed had been recorded, and for more than one and a half years after appellant had sold it, did appellee bring suit against him. To say the least of it, this was gross laches, and sufficient to bar relief; unless satisfactorily explained, which has not been done. There is some conflict in the testimony, but mostly upon minor and immaterial points. Much of the testimony was also irrelevant, immaterial and in many respects open to objections. However, since the record does not affirmatively show that the objections to the admissibility or competency of any of this testimony, which is found in the record, were presented to the chancellor, and expressly ruled upon by him in the

court below at or before the final hearing of the cause, we can not consider or allow same in this court. *Skinner v. Campbell,* 44 Fla. 723, 33 South. Rep. 526; *Stockton v. The. National Bank of Jacksonville, supra.*

As we have already seen, the testimony does not support the allegations of the bill and signally fails to sustain the charge of fraud made against appellant. In so far as the testimony tends to show any acts of fraud upon the part of appellant other than those alleged in the bill that can not avail appellee. *Howard v. Pensacola & A. R. Co.,* 24 Fla. 560,.5 South. Rep. 336; *Tate v. Pensacola, Gulf, Land & Development Co.,* 37 Fla. 439, text 455, 20 South. Rep. 542; *Parrish v. Pensacola & A. R. Co.,* 28 Fla. 251, 9 South. Rep. 696.

We are of the opinion that the effect of the sworn answer as evidence has not been overcome and that all the errors are well assigned. It therefore follows that the decree appealed from must be reversed and it is so ordered, with directions to dismiss the bill; the appellee to pay the costs of this appeal.