OCALA FOUNDARY AND MACHINE WORKS, A CORPORATION, APPELLANT, V. P. R. LESTER AND R. G. DANIELS AS COPARTNERS UNDER THE FIRM NAME OF OCKLAWAHA LUMBER COMPANY, APPELLEES.

1. An appeal in chancery opens whole case for the consideration of the appellate court, and a cross-appeal is not essential to entitle an appellee to a reversal of a decree which contains errors prejudicial to his rights.

2. At common law, independent of statute, an artisan had a lien upon chattels for the price of work done on them and

was entitled to retain the exclusive possession thereof until such price had been paid, but the common law gave no right to sell the chattel to enforce the lien, and there was no adequate method of foreclosing the lien.

3. The effect of section 1744 of the Revised Statutes of 1892, as amended by Chapter 4582 of the acts of 1897, was, first, declaratory of the common law right of the artisan to hold possession of the chattel, second, to restrict the right to hold such possession to a period of three months after the lien had attached, and, third, to provide certain remedies for the enforcement of such liens.

4. The second part of section 1745 of the Revised Statutes of 1892 gives to the mechanic or artisan who has acquired a lien upon a chattel the right to sell the same at public auction, after three months from the time the charges of the mechanic or artisan, became due, as therein provided, without any judicial proceedings, but it is optional with the mechanic or artisan to pursue the remedy given by this section, or to elect to pursue one of the other remedies given by statute.

5. The liens given by statute to the mechanic or artisan may be enforced by a bill in equity under section 1510, 1744, of the Revised Statutes of 1892, as the summary remedy provided by section 1745 is not exclusive, the remedies given by the different statutes being merely cumulative.

6. The mere retention of the possession of the chattel by the mechanic or artisan does not estop or preclude him from filing a bill in equity for the enforcement of his lien, and by filing such bill before the period of three months specified in section 1744 and 1745 Revised Statutes of 1892 had elapsed a clear intention is evinced on the part of such mechanic or artisan to pursue his remedy in equity rather than the summary remedy given by section 1745.

7. As a general rule, where a plea is filed to the whole bill and an answer is also filed purporting to be in support of the plea, but in reality containing more than is strictly applicable to the support of the plea, such an answer will have the effect of overruling the plea, provided some ruling of the court is invoked thereon.

Ocala F. & M. Works v. Lester and Daniels—Syllabus.

8.   Where a plea is filed to the whole bill and an answer is also
     filed purporting to be in support of the plea but containing
     more than is applicable in support thereof, embracing, in
     fact, other and distinct defenses to the whole bill, and
     the plea is not set down for argument, no ruling of the
     court being invoked thereon, but the complainant files a
     general replication to both the plea and the answer, treat-
     ing them as interposing valid defenses, not incompatible
     with each other, and the chancellor below so treats them,
     an appellate court is warranted in treating them likewise
     and in holding that the plea was not overruled by the an-
     swer.

9.   A plea and an answer strictly and wholly in support of the
     plea form one pleading, and such an answer can not be
     regarded as a defense independent of the plea.

10.  As a general rule, when a replication has been filed to a
     plea it is incumbent upon the defendant to prove the
     matters contained in the plea, the burden of proof being
     cast on him.

11.  Where a plea is filed to the whole bill and an answer is also
     filed thereto containing more than is applicable in sup-
     port of the plea, embracing other and distinct defenses to
     the bill, and general replications are filed to both the plea
     and the answer, it is incumbent upon the defendant to
     prove the matters contained in his plea, and incumbent
     upon the complainant to prove the allegations in his bill
     as to the matters contained in the answer which were not
     in support of the plea, but which were responsive to the
     bill. In such a case the burden of proof in part rests
     upon the complainant, and in part upon the defendant.

12.  A sworn answer, denying the allegations in the bill which
     are essential to sustain the case of the complainant and
     entitled him to relief, is evidence in favor of the defen-
     dant, and conclusive, unless overcome by the testimony
     of two witnesses, or of one witness corroborated by other
     circumstances which are of greater probative weight than
     the answer, provided that the oath to the answer has not
     been waived, and the answer is directly and positively
     responsive to the material allegations of the bill. Where

one witness on behalf of the complainant testifies positively as to the material allegations of the bill and the testimony of the defendant does not support his answer, being evasive or in conflict therewith, this is to be taken into consideration by the court and in connection with all the circumstances as shown by the pleadings and the evidence may prove sufficient to overcome the probative force of the sworn answer.

13. Affirmative relief can not be decreed in favor of a defendant, except in matters of accounting, upon the facts stated in the answer. Where a defendant seeks affirmative relief he should file a cross-bill.

14. Under the provisions of rule 19, Supreme Court Rules, as amended on February 17, 1897, no objection will be allowed to be taken in the appellate court to the admissibility or competency of any testimony, oral or documentary, found in the record as evidence in a chancery cause, unless the record affirmatively shows that the objection thereto was presented to the chancellor and expressly ruled upon by him in the court below at or before the final hearing of the cause. Every paper purporting to be evidence found copied by the clerk into the record in a chancery cause will be presumed by the appellate court to have been offered in evidence in the court below.

This case was decided by Division A.

Appeal from Circuit Court for Marion County.

STATEMENT.

On the 2nd day of October, 1902, the appellant filed its bill of complaint against the appellees in the Circuit Court in and for Marion county, and on the 30th day of January, 1903, filed its amended bill, which was as follows:

"Comes your orator Ocala Foundry and Machine Works, a corporation organized under and by virtue of

the laws of the State of Florida, by Allred and Davis its solicitors, and pursuant to an order of the court heretofore made, files this its amended bill of complaint, complaining of P. R. Lester and R. G. Daniels as co-partners under the firm name of Ocklawaha Lumber Company, shows to the court: That it is a corporation organized and existing as above set out for the purpose among other things, of repairing boilers, tanks, and other machinery and apparatus and of supplying the material necessary for such repair; and that its principal place of business is in Ocala, Marion county, Florida. That P. R. Lester and R. G. Daniels are co-partners under the firm name of Oclawaha Lumber Company and are doing business in Marion county, Florida, and as such co-partners are now and were on the 19th day of February, A. D. 1902, the owners of a certain locomotive engine boiler and tank of Fifield make, which said locomotive engine boiler and tank are placed, used and operated on one and the same platform and constitute one complete apparatus and machine.

Your orator further shows that on the 19th day of February, A. D. 1902, the said defendants, as above mentioned, delivered to your orator the above described machine or apparatus and requested and instructed your orator to overhaul and repair the boiler attached thereto and put the same in good serviceable condition and to furnish and put therein one hundred and eighteen two inch tubes four feet six inches long, to furnish and put in one boiler head, one water gauge and set of gaugecocks, it being understood by and between your orator and defendants that your orator should and would furnish all materials necessary for such work, labor and repair, and would perform such work and labor in skillful and workmanlike manner, and said defendants then and there

agreed to pay to your .orator for such work, labor and material the sum of two hundred and ninety-five dollars.

Your orator further shows to this Honorable Court that. on the tenth day of June, A. D. 1902, the said defendants requested the complainant by letter in writing to put the said dummy engine in best running order, in first class condition at and for an agreed price of $285.00. A copy of which said letter and of the letter to which it constitutes and is a reply are hereto attached and marked 'Exhibits A & B' respectively and made a part hereof.

Your orator further shows that there was no specific time fixed or agreed upon for the completion of said work and labor either upon said boiler or engine. And that your orator did and performed all things necessary by it to be done and performed and in the manner required by the terms and conditions of said contracts above  mentioned and furnished and put in said boiler the said one hundred and eighteen two inch tubes and furnished and put in said boiler head, above mentioned, and furnished and attached said water gauge and gauge-cocks and overhauled and put said boiler in good serviceable condition, as required by the terms of said contract first above mentioned.

And repaired and worked upon said dummy engine and put the same in first class condition and in best running order and furnished all material necessary so to do and completed said work and labor on the 15th day of Sept., A. D. 1902, and furnished all of said material necessary to be furnished from time to time prior thereto and on said last mentioned date notified said defendants that said work, labor and repairs required by said contracts to be done, had been done and completed, and demanded of defendants the sum of $580.00, which said sum of money was then and there due and payable from said defendants

to your orator for the performance of said work, repair and materials furnished.

Your orator further shows to the court that it is now in possession of the above described property and has been in possession of the same since the completion of said work and labor, and that your orator has a lien on said property for the sum of $580.00 agreed to be paid by defendants to your orator for work and labor thereon as above mentioned together with reasonable solicitors fee for bringing this suit.

Wherefore your orator prays: 1st. That the State's most gracious writ of subpoena do issue directed to above defendants P. R. Lester and R. G. Daniels as co-partners, and returnable according to law, requiring them to appear on a day to be therein named to answer this your orator's bill of complaint.

2nd. That a receiver be appointed by this Hon. Court, empowered and authorized to take into custody and care for the above mentioned property and hold the same subject to the orders and decrees of this court. And with such other and further powers as this court may deem proper for the preservation of said property.

3rd. That the issues in this case being made up and testimony being taken, this court enter a final decree in said cause decreeing, among other things, that there is due from the defendants to your orator the sum of $580.00 or such other sums as may appear to this court to be due, together with a reasonable solicitors fee and the costs of the suit.

4th. That this court decree that this complaint has a lien on the property herein described, for the said sum of $580.00, together with a reasonable solicitors fee and the

23 S C

costs of the suit, and that unless the said sum of money so found by the court to be due and to be by defendants to your orator on or before a day in said decree named that said property be sold by the proper officer of this court, after due notice of such sale shall have been given; and that the proceeds of such sale shall be applied to the discharge of your orator's lien.

5th. And for such other and further relief as to your Honor may seem meet and is in equity just.

And your orator will forever pray.

(EXHIBIT A.)

Silver Springs, Fla. 6-10, 1902.

Ocala Foundry & Machine Co.,

Ocala, Fla.

Dear Sirs:—

You will please put the dummy in the best running order, in first class condition, as named by you in yours of the 30th ulto.

Do not get up any arch irons for us until further orders, but kindly let us have the rest of the car wheels pressed on axles at your earliest convenience, also brasses and boxes for each set of wheels. Further, please let us have small wheel put on the little axle to match wheel which you have of ours and concerning which our Mr. L. discussed with your Mr. Kline a few days ago.

Yours truly,
Ocklawaha Lumber Co.
L.

VOL. 49, JANUARY TERM, 1905.     355

Ocala F. & M. Works v. Lester and Daniels—Statement of Case.

(EXHIBIT B.)

Ocala, Fla., May 30, 1902.

Mr. Lester,

Silver Springs, Fla.

Dear Sir:—

To put the locomotive or dummy in best running order, it would cost you $285.00, but to rig it up in running shape, so that it can be used all right, we can do it for $210.00.

We are not positive as to delivery, but would hope to get it off within 30 days, nothing unforeseen preventing.

Yours truly,

Ocala Foundry & Machine Works.

Elmer E. Cline,

General Manager."

On the 4th day of February, 1903, the appellees filed the following demurrer to the amended bill: "The defendants demur to the bill as amended upon the following grounds: 1st. The bill shows on its face that the complainant holds possession of the property upon which the lien is claimed, and therefore has no right to proceed for enforcement of said alleged lien in this court.

2nd. The bill does not show what material, if any, was furnished for or upon said engine.

3rd. Bill does not show what if any work was done upon said boiler prior to June 10th, 1902, nor what material if any had been furnished up to that time.

4th. Bill does not allege that the work was done in a reasonable time, nor state any facts showing that the time occupied in finishing said work, was reasonable.

5th. The bill is otherwise defective and insufficient as shown on its face."

On the 5th day of May, 1903, the appellees filed the following motion: "Come the said defendants in this cause and show to the court that it appears by the said amended bill of complaint that the complainant claiming a lien upon the property therein mentioned, is in possession thereof, and has retained possession thereof, since the alleged completion of said work. Complainant also shows that after the expiration of three months from the time of filing the bill herein, defendants made demand upon complainant, that said property be delivered to the defendants, which demand was refused.

Defendants therefore move the court that the complainant by order of this court be now required to surrender possession of said property, and to deliver same to defendants, on penalty of having the bill of complaint dismissed."

On the 7th day of May, 1903, the chancellor below made an order denying the motion and overruling the demurrer.

On the first day of June, 1903, the appellees filed the following sworn plea: "Come now the said defendants P. R. Lester and R. G. Daniels, co-partners under the firm name of Ocklawaha Lumber Company, not confessing any of the matters and things in the said bill of complaint alleged and for plea to the said bill of complaint, says: That these defendants on the 5th day of September, A. D. 1902, were indebted to the complainant in the sum of $285.00 for all the material furnished and for all the labor and services done and bestowed by the complainant in the repairing of the said locomotive or dummy engine, and that said sum of $285.00 was the contract price theretofore agreed upon by and between complainant and these defendants for furnishing of said material and for the

VOL. 49, JANUARY TERM, 1905.      357

Ocala F. & M. Works v. Lester and Daniels—Statement of Case.

performance of the labor in overhauling, repairing and putting in the best condition of the said locomotive or dummy engine including the boiler thereto belonging and a part thereof; that on or about the first day of October, A. D. 1902, and prior to the commencement of this suit these defendants tendered and offered to pay to the complainant the full amount of said indebtedness, to-wit: $285.00 so due to complainant from defendants as aforesaid and at the time of the making of said offer and tender of payment the defendants demanded that complainant should surrender and deliver to defendants the possession of the said locomotive or dummy engine upon which complainant herein claims their said lien; that the said complainant then and there refused to accept the said sum of $285.00 so offered and tendered to be paid by said defendants, and then and there refused to surrender or deliver possession of the said locomotive or dummy engine to defendants, and then and there informed defendants that they claimed the right of possession of said property and were holding the same intended to hold the same under and by virtue of the laws of the State of Florida creating liens in their favor upon and against the said property; that the complainant retains and withholds and has retained and withheld from the possession of the defendants the said property and every part thereof since September 15th, A. D. 1902; that on the ...... day of February, A. D. 1903, these defendants again made demand upon complainant that the said property should be delivered and surrendered to defendants which demand the complainant again refused; that the said complainant has and claims no other right, title and interest in said property and that the complainant claims no other right of possession thereof other than that under the laws of

the State of Florida if, the said complainant, is entitled
to such possession as a lienor under the lien laws of this
State and holds and is continuing to hold possession of
said property solely by virtue of this alleged claim against
and this alleged claim upon the same.

Wherefore, by reason of the matters and things herein
pleaded and by reason of the complainant's retaining and
holding possession of the said property upon which it
claims said lien for the period of three months and over,
these defendants say that the alleged lien of the complain-
ant, if any they had, has become extinguished and dis-
charged and that the said complainant can not lawfully
institute or maintain this said suit for enforcement of
said lien."

On the 6th day of July, 1903, the appellant filed a gen-
eral replication to this plea, and on the 14th day of July
the appellees, by leave of the court, filed "in support of
their plea" the following answer: "Now come the defend-
ants by their solicitor, and by leave of the court file this
their answer to the bill of complaint in support of the
plea of said defendants heretofore filed in said cause, as
follows, towit:   These defendants admit that they de-
livered to the complainant on or about February 19th,
1902, the said locomotive or dummy engine, and they say
that same was delivered to complainant with the view of
having the same put in the best running order and com-
pletely repaired, and with the view to having the com-
plainant do all work and furnish all materials necessary
therefor.

(2) Defendants further say that from said date until
May 30th, 1902, no agreement was made as to the amount
of work or materials that would be necessary to put the
same in the best running order, and that the complainant

during said time performed no work and furnished no materials therefor, but during said time the said locomotive remained in the possession of the complainant pending an agreement as to the amount of such work and materials necessary, and as to the price to be paid therefor.

(3) Defendants further say that on May 30th, 1902, complainant wrote the letter marked exhibit 'A' and attached to the bill of complaint and that on the 10th day of June defendants wrote to complainant the letter of that date fixed as an exhibit with the bill, marked 'B,' wherein and whereby it was agreed that the complainant should put the said locomotive or dummy engine in the best running order for the sum of $285.00.

(4) Defendants deny that they agreed to pay complainant the sum of $290.00 or any sum for repairing the said boiler alone, and say that no contract was ever made by defendants, as alleged, for furnishing materials or doing work upon the boiler alone by the complainant, as stated in the bill.

(5) Defendants further say that the only contract in relation to the said locomotive or dummy engine, or any part thereof, made between complainant and defendants, is the contract embodied in said letters.

(6) Defendants further say that in and by said contract the complainant agreed to complete and finish said work in a reasonable time, but failed and refused to do so and kept the said locomotive or dummy engine in its possession for more than ninety days, until September 15th, 1902, which defendants say was an unreasonable time, and on which day complainant notified defendants that the said work was completed and thereupon demanded the payment of the sum of $580.00.

(7) On or about the first day of October, 1902, defend-

360 SUPREME COURT OF FLORIDA.

Ocala F. & M. Works v. Lester and Daniels—Statement of Case.

ants, in order to avoid the incurring of great damages, and for the purpose of securing the possession of said locomotive or dummy engine, tendered and offered to pay to complainant the contract price for said work as agreed upon, towit: $285.00, and thereupon demanded that complainant should deliver to them the said locomotive or dummy engine, and complainant refused to deliver said property unless defendants would pay to it the said sum of $580.00.

(8) That again in the month of February, 1903, defendants tendered to the complainant the said amount of $285.00 and again demanded the delivery to them of said property, which demand and tender the complainant then refused.

(9) Defendants further say that defendants after September 15th, 1902, requested and demanded of complainant that they be allowed to inspect and examine and test the said locomotive or dummy engine and the work and material alleged to have been done thereon, and that complainant refused to allow defendants to examine the same or to ascertain whether or not the said contract had been complied with, but kept the said locomotive or dummy engine in its possession, and excluded defendants, and refused to permit them to make any examination whatever thereof.

(10) And defendants deny that the complainant has done and performed the work, or any part, as alleged, and deny that it has made repairs or furnished the materials as alleged, and says that it is not true that the said dummy engine has been put in the best running order, according to the contract, and that it is not true that complainant, has, in any way, performed or complied with its said contract, as alleged, and the defendants require

that the complainant shall make strict and complete proof in relation to every item of material alleged to have been furnished or used on said engine, and as to every detail and item of any and all work alleged to have been done thereon by complainant and that complainant shall be held to make strict proof of compliance, on its part with said contract.

(11) Defendants further say that it is not true that the complainant completed said work within a reasonable or proper time.                                   ,

(12) They also deny that $580.00 or any sum is due to complainant, as alleged, and that the complainant has acquired or is entitled to enforce any lien for any sum of money whatever against said property.

(13) Defendants admit that the complainant is in possession of said property and that it has been since February 19th, 1902, and in this behalf defendants say that since the 15th day of July, 1902, these defendants have been compelled to pay, and have paid the sum of $150.00 per month for the hire of a locomotive engine used in the place of the locomotive or dummy engine now held by the complainant in its possession and that defendants have been compelled to pay said sum since said date and up to the present time by reason of the failure and refusal of the complainant to finish and complete the work and to furnish the materials as agreed in said contract within a reasonable time, and on account of the failure and refusal of said complainant since then to deliver and surrender to said defendants the said dummy engine upon demand made and payment tendered as aforesaid, and that since September 15th, 1902, the complainant has held possession of said property, claiming such possession specifically

and solely under its alleged claim and right as a lienor, and under no other claim or right.

(14) And during said time the complainant has had the use and the benefit of the said locomotive or dummy engine, the reasonable and ·proper value of which is the sum of $150.00 per month.

Now having fully answered the defendants pray to be hence dismissed, &c."

On the said 14th day of July the appellant filed a general replication to this answer, and on the 27th day of October, 1903, an examiner was appointed to take the testimony in the cause and report the same to the court, which report was filed on the 16th day of November, 1903.

On the 22nd day of January, 1904, the chancellor rendered a final decree dismissing the bill of complaint at the cost of the appellant, and at the same time filed a written opinion.

On the 5th day of February, 1904, a petition for rehearing was filed by the appellant, which was granted by the chancellor on the 15th day of said month, and on the 23rd day thereof the following decree was rendered by the chancellor: "This cause came on to be finally heard upon a rehearing granted in this cause, and the same has been argued by counsel for the respective parties and the court having considered the same, when it is ordered that the decree rendered this cause on the 22nd day of January, A. D. 1904, and entered in the minutes of this court in book 'M' pages 486 & 487 be and the same is vacated and set aside.

And it further appearing to the court that the complainant has in part sustained the allegations of its bill, and should have a decree to such part so sustained and not sustaining the said bill as to other parts of the said

bill that the same should be dismissed, as to the part not sustained. The court being of the opinion the complainant has sustained its bill alleging a contract for the repair of the steam boiler and the tram locomotive mentioned and described in the bill, and the court having heard the evidence in said cause and the argument of counsel, it is, after consideration by the court, considered, ordered and decreed, that the complainants have performed labor upon and furnished material in the repair of a certain steam boiler attached to tram locomotive of the Fifield manufacture now in the possession of the complainant, in the sum of two hundred and ninety-five dollars, and for which work, labor and material the said complainants are decreed to have a lien on the said steam boiler, together with the sum of twenty-nine dollars and fifty cents for attorneys fees in the collection of the same, with the costs of this proceedings.

It is further ordered that the said P. R. Lester and R. G. Daniels as co-partners under the firm name of the Ocklawaha Lumber Company to pay to the Ocala Foundry and Machine Works, within five days from this date the said sum of three hundred and twenty-four dollars and fifty cents, with the cost of this proceeding to be taxed by the clerk of this court, and in default of the payment of the said sum then that the said steam boiler herein mentioned be sold after four weeks advertisement, at public auction to the highest bidder in front of the court house door for Marion county, Florida. The said advertisement to be in a weekly newspaper, once a week, published in Marion county, Florida.

It is further ordered that so much of the said bill as sets up the performance of the contract for the repair of one steam dummy locomotive now in the possession of the

complainants, has not been sustained, and the complainants are not entitled to the relief therein prayed, or to any relief that this court can now decree, and that the said bill to this extent be and the same is dismissed without prejudice to the complainants.

Done and ordered at Ocala, Florida, on this the twenty-third day of February, A. D. 1904."

The chancellor also filed a written opinion with this decree, both of which said opinions are copied in the transcript.

From this decree the appellant has entered its appeal to this court.

Such other facts as are necessary will be stated in the opinion.

*Allred* and *Davis,* for Appellant.

*R. L. Anderson,* for Appellees.

SHACKLEFORD, J., *(after stating the facts.)*

An appeal in chancery opens the whole case for the consideration of the appellate court, and a cross-appeal is not essential to entitle an appellee to a reversal of a decree which contains errors prejudicial to his rights. Parken v. Safford, 48 Fla. ..., 37 South. Rep. 567, and authorities there cited.

In the instant case both the appellant and the appellees are urging a reversal of the decree, though upon entirely different grounds and for dissimilar reasons.

It is contended on behalf of the appellees that the chancellor erred in denying their motion, in overruling their demurrer, in granting the petition for a rehearing

and in rendering any decree whatever in favor of the appellant. It is forcibly urged that by retaining the possession of the machinery under its claim of a lien thereon for a longer period than three months after the lien had attached, the appellant had elected to pursue the first remedy given by section 1744 of the Revised Statutes of 1892, as amended by Chapter 4582 of the acts of 1897, and, therefore, was bound by its election and precluded from filing a bill in equity, the second remedy given by said statute. Campbell v. Kauffman Milling Co., 42 Fla. 328, 29 South. Rep. 435, is relied upon to support this contention. We are of the opinion that this contention is untenable and that the cited case does not apply. It is undoubtedly true that, at common law, independent of statute, an artisan had a lien upon chattels for the price of work done on them and was entitled to retain the exclusive possession thereof until such price had been paid. See Wright v. Terry, 23 Fla. 160, 2 South. Rep. 6; M'Intyre v. Carver, 2 W. & S.. (Pa.) 392; Boisot on Mechanic's Liens, section 759, and authorities there cited. It is also true that at common law a lien on a chattel for work and materials gave no right to sell the chattel to enforce the lien, and that there was no adequate method of foreclosing the lien. Boisot on Mechanics' Liens, section 784; 20 Am. & Eng. Ency. Law (2nd ed.) 527; Phillips on Mechanics' Lien (3rd ed.), section 1. The effect, then, of section 1744 of the Revised Statutes of 1892, as amended by Chap. 4582 of the acts of 1897, was, first, declaratory of the common law right of the artisan to hold possession of the chattel, second, to restrict the right to hold such possession to a period of three months after the lien had attached, and, third, to provide certain remedies for the enforcement of such liens. However, for a fuller discussion of this point see Ocala Foundry and Machine Works

v. Lester *et al.*, an action of replevin between the same parties who are appellant and appellees here, decided at the present term.

. The second part of Sec. 1745 of the Rev. Stats. of 1892, gives to the mechanic or artisan who has acquired a lien upon a chattel the right to sell the same at public auction, as therein provided, without any judicial proceedings, but it is optional with the mechanic or artisan to pursue this course, or to elect one of the other remedies provided by statute.   As alleged in the bill, the appellant completed the work and labor upon the machinery on the 15th day of September, 1902, and filed its bill of complaint for the enforcement of its lien on the 2nd day of October, 1902, long before the period of three months specified in said sections 1744 and 1745 had expired, thereby clearly evincing that appellant had elected to pursue its remedy in equity, as given not only by said section 1744 but by section 1510 of the Revised Statutes of 1892 as well. That appellant had the right to make this election and to proceed in equity see Hathorne v. Panama Park Co., 44 Fla. 194, 32 South. Rep. 812; Futch v. Adams, 47 Fla. ..., 36 South. Rep. 575.  It follows that no error was committed by the chancellor either in denying the motion or in overruling the demurrer.

Before taking up for discussion the other contentions made by the respective parties, it seems advisable to consider just what issues were presented by the plea which was filed to the entire bill and the answer purporting expressly to be filed in support thereof, and the replications filed to the plea and answer.  It will be readily observed that the answer not only contains matter in support of the plea, but in addition thereto contains more than is applicable in support thereof, embracing in fact, other and distinct defenses to the whole bill.  The rule seems

to be well settled that when an answer contains more than is strictly applicable to the support of the plea, it will have the effect of overruling the plea. Stearns v. Page, 1 Story 204, Fed. Cas. No. 13,339; Ferguson v. O'Hara, Pet. C. C. 493, Fed. Cas. No. 4,740; Bell v. Woodward, 42 N. H. 181, text 194, and authorities there cited; Dakin v. Union Pac. Ry. Co., 5 Fed. Rep. 665; Grant v. Phoenix Life Ins. Co., 121 U. S. 105, 7 Sup. Ct. Rep. 841; 16 Ency. of Pl. & Pr., 609, 615, and authorities cited in note 3 on 609; Pigue v. Young, 85 Tenn. 263; Cheatham v. Pearce, 89 Tenn. 668, 15 S. W. Rep. 1080; Harrison v. Farrington, 38 N. J. Eq. 358; Fletcher's Eq. Pl. & Pr., section 247; Story's Eq. Pl. (10th ed.), sections 688 and 693; 1 Dan. Ch. Pl. & Pr., (6th Amer. ed.) 617; 1 Breach Mod. Eq. Pr., section 299; 1 Foster's Fed. Pr. (3rd. ed.), section 137; 1 Barbour's Ch. Pr. * page 116; Huntington v. Laidley, 79 Fed. Rep. 865; Bangs v. Strong, 10 Paige 11; Beames' Pleas in Eq. 38 et seq. Also see Langdell's Eq. Pl. (2nd ed.)' Chap. IV, part 2, for the most satisfactory discussion of pleas in equity that we have been able to find. While, however, this is the settled rule, as we have seen from an examination of the authorities cited, yet it seems to have been applied only where some ruling of the court has been invoked thereon. What applicability has it when no decision of the court is sought and the plea and answer in support thereof, though the answer contains additional and extraneous matter, are treated as interposing valid defenses, not incompatible with each other, by both the complainant and the defendants, general replications being filed to each, as was done in the instant case? Here we have a paucity of authority. The most nearly in point case which we have been able to find is Seifred v. People's Bank, 2 Tenn. Ch. 17, which was affirmed on appeal in 1 Baxter, 200, and even that case

is not analogous to the instant case, for the reason that
no proof was taken therein. This is the only case cited in
16 Ency. of Pl. & Pr. 610, to support the text to the effect
that the rule we have just been considering "applies only'
to cases wherein the plea is set down for argument and
not to a case where the plaintiff takes issue upon the plea
and answer and thereby treats them as valid defenses and
compatible with each other." We are of the opinion that
the reasoning of Chancellor COOPER is sound, and that it
is still more cogent as applied to the instant case, wherein
testimony was taken by both the appellant and the appel-
lees upon the issues as made by the plea and answer and
the replications filed thereto. In any event, as the parties
litigant and the chancellor so treated the matter in the
court below, we shall follow their example and so treat it
here. The cases of Hart v. Sanderson, 16 Fla. 264, same, 18
Fla. 103, text 110, and of Crump v. Perkins, 18 Fla. 353,
have but little applicability to the instant case, as an
examination thereof will show. In the case of Hart v.
Sanderson, in 16th Fla. a plea to the bill and also an
answer in support thereof were filed, a replication was
filed but withdrawn, the plea had been set down for argu-
ment and overruled, and the case then set down for hear-
ing upon bill and answer. It is distinctly stated in the
opinion that "the answer here was *strictly* and *wholly in
support of the plea,*" therefore, it was properly held that
the answer could not be regarded as a defense independ-
ent of the plea. On the second appeal in the same case in
18th Fla. the opinion rendered upon the first appeal was
cited, approved and followed. In the case of Crump v.
Perkins, *supra,* this ruling was again approved and fol-
lowed and it was held that "a plea and answer in support
thereof is one pleading," but again it was stated in the
opinion rendered therein that the answer filed was in sup-

Ocala F. &. M Works v. Lester and Daniels—Opinion of Court.

port of the plea, it nowhere appearing that the answer contained any additional matter, hence the distinction between all three of these cases and the instant case is obvious.

Having determined that the plea in the case now before us for consideration was not overruled by the answer, for the reasons which we have stated, before proceeding to consider the evidence and the decrees it becomes necessary to determine upon whom the burden of proof rested. The general rule is that when a replication has been filed to a plea, it is incumbent upon the defendant to prove the facts which the plea suggests. 1 Dan. Ch. Pl. & Pr. (6th Amer. ed.) 698; Dows v. McMichael, 6 Paige 139; Farley v. Kittson, 120 U. S. 303, 7 Sup. Ct. Rep. 534; Story's Eq. Pl. (10th ed.) section 697; Fletcher's Pl. & Pr. section 279; 1 Foster's Fed. Pr. (3rd ed.) section 142; Stead's Exrs. v. Course, 4 Cranch 403; United States v. California & O. Land Co., 148 U. S. 31, 13 Sup. Ct. Rep. 458; Beames' Pleas in Eq. 325. See especially Langdell's Eq. Pl. (2nd ed.) sections 101 and 108, making a distinction in applying this rule between pure or affirmative pleas and negative pleas. However, the plea filed in the instant case could not be held to be a negative plea, and, therefore, we are of the opinion that it was incumbent upon the appellees to prove the matters contained in their plea. As to the matters contained in the answer which were not in support of the plea, but which were responsive to the bill, the burden was upon the appellant to prove the allegations in its bill. As the answer was under oath, the oath thereto not having been waived, it further follows that the sworn answer was evidence in favor of the appellees as to those matters contained therein which were directly and positively responsive to the material allegations of

24 S C

the bill, and that as to those matters such an answer was conclusive, unless its probative force and effect was overcome by the testimony of two witnesses, or the testimony of one witness corroborated by other circumstances which were of greater probative weight than the answer. Pinney v. Piney, 46 Fla. 559, 35 South. Rep. 95, and authorities cited therein. It follows, then, that in part the burden of proof rested upon the appellant, and in part upon the appellees. 1 Foster's Fed. Pr. (3rd ed.), section 137.

Referring to the plea interposed to the whole bill by the appellees, it will be seen that it admitted an indebtedness from appellees to apellant of the sum of $285.00 for all the material furnished and for all the labor and services done and bestowed by appellant in the repairing of the said machinery, that said sum was the contract price agreed upon between appellant and appellees for the furnishing of said material and the performance of the labor in overhauling, repairing and putting in the best condition the locomotive or dummy engine, including the boiler thereto belonging and a part thereof; that on or about the first day of October, 1902, prior to the institution of the suit, appellees tendered and offered to pay to appellant said sum of money, and at the time of said tender demanded that appellant should surrender the possession of said machinery, which tender and demand were refused by appellant; that in the month of February, 1903, appellees made a like demand upon appellant, which was again refused, and that by reason of said matters and of appellant's retaining possession of the machinery for the period of three months and over the lien of appellant thereon had become extinguished and discharged, and appellant could not lawfully institute or maintain its suit in equity for the enforcement of its lien.

We have already seen that, in the light of the authorities cited, the mere retention of the possession of the machinery by appellant did not and could not have the effect of extinguishing or discharging any lien which appellant might have had thereon, or of precluding appellant from filing a bill in equity for its enforcement, hence further discussion of this point is unnecessary. A careful examination of all the evidence, which we do not deem it advisable to set out in detail, convinces us that the appellees failed to prove the matters contained in their plea. We are of the opinion that the evidence establishes the making of two contracts, as alleged in the bill, therefore, the chancellor correctly found against appellees upon their plea.

The remaining portions of the answer are to the effect that appellant had not done and performed the work or any part thereof, as alleged, had not performed or complied with its contract, as alleged, but had failed to put the dummy engine in the best running order, and had failed to complete the work within a reasonable time. The answer further averred that after the 15th day of September, 1902, appellees had requested and demanded of appellant that they be allowed to inspect, examine and test the dummy engine and the work and materials alleged to have been done thereon, which request and demand appellant had refused, and that by reason of appellant's retaining possession of the machinery appellees had been compelled to pay the sum of $150.00 per month for the hire of an engine in place of the one held by appellant, from the 15th day of July, 1902, up to the time of the filing of the answer, during which period appellant had

had the use and benefit of the engine so retained by it, the reasonable use and proper value of which was the sum of $150.00 per month. ,

Before entering into a discussion of the evidence we call attention to two facts, first, that the answer was not filed until the 14th day of July, 1903, some six weeks after the filing of the plea, and, second, that no exceptions were filed to the answer, but appellant filed a general replication thereto.

From the long delay in filing the answer, as well as from the statements contained in the plea and the evidence to which we shall refer, we are impressed with the idea that it must have been an after-thought on the part of appellees to claim as part of their defense that appellant had failed to put the engine in the best running order and had also failed to complete the work within a reasonable time.   No such claims are made in the plea, but an indebtedness of $285.00 is admitted therein and that appellees had tendered the same on two different occasions to appellant and demanded the possession of the engine.

Turning to the evidence, we find that Elmer E. Cline, one of the witnesses introduced on behalf of appellant testified positively that the work on the engine and boiler was done in a first class manner and the engine put in running condition agreed upon in the letter written by witness to appellees on the 30th day of May, 1902, the same having been repaired thoroughly and tested. The witness, at the time this work was done, was the general manager of appellant, though he had no connection therewith at the time he gave in his testimony.   He further testified that all of the work was completed on the 15th day of September, 1902, when witness called up appellees

over the telephone, notifying them of the fact of comple-
tion and that appellant expected to test it; that appel-
lant did test it by steaming it up and running it on the
side track, and after so testing it left the boiler filled
with water and wood on the tender ready to fire up at any
time appellees requested; that several persons were pres-
ent when the test was made and that no leaks were found
in the boiler.

P. R. Lester, one of the appellees, testified that he saw
the engine fired up, under steam, about the 15th day of
September, 1902, when he went to appellant's place of
business to get it, but that it was not run and appellant
declined to let him take it out because he would not sign
the notes for the amount demanded. He further testified
that he became indignant when informed that he must
sign a note for $580.00, and immediately made a tender to
appellant of $285.00, the amount he claimed was due ap-
pellant, and demanded possession of the engine, which
tender and demand were refused, were renewed in Febru-
ary, 1903, and again met with a refusal. He failed to tes-
tify, however, that on either occasion or at any time after
the completion of the work he notified appellant of its
failure to do the work in accordance with the contract
or that he was dissatisfied with the manner in which it
had been done, though he did testify that he found the
engine "not in the best condition," specifying that the
cylinders were cracked and leaking before he left
Georgia, having iron bands swung around their heads.
and that they remained the same, also that there was a
crack in the top of the boiler and a patch on it, the crack
having extended beyond the patch, to which he had called
appellant's attention before the work was done, that these
things had not been remedied and that the boiler still

leaked when steamed. However, he testified that he had seen it under steam but once, which was the day he made the first tender. The witness further testified that two steam brakes were off the engine, leaving only two thereon instead of four, and that the two brakes were off when he went to get the engine, which was about the 15th day of September, 1902.

The only other witness introduced who testified as to defects in the work done by appellant was J. F. Stewart, who testified that he had seen the engine but once, which was the time he came in with Mr. P. R. Lester to get it, that he examined it and *thought* it was in bad condition, two cylinders on the engine being cracked and two steam brakes gone, but that he did not know whether the cracks leaked steam or not.

Taking all this testimony in connection with the pleadings, we are of the opinion that appellant sustained the burden cast upon it of proving the allegations in its bill, that the probative force of the sworn answer was overcome and that appellant was entitled to the relief prayed. See Spencer's Appeal, 80 Pa. St. 317; Jacks v. Nichols, 5 N. Y. 178. Hence it follows that the first decree rendered by the chancellor was erroneous, that no error was committed in granting the petition for a rehearing, and that the last decree rendered by the chancellor was erroneous in not finding that appellant was entitled to a lien for the sum of $580.00, the amount claimed in the bill.

As to the affirmative relief sought by appellees in their answer as to damages that they had suffered by reason of the dilatoriness of appellant in completing the work, it is too well settled by decisions of this court that affirmative relief can not be granted upon the prayer in an answer, no cross-bill being filed, to require any discussion. Wooten

v. Bellinger, 17 Fla. 289; Sanford v. Cloud, 17 Fla. 557; Lindsay v. Mathews, 17 Fla. 575; Mattair v. Card, 18 Fla. 761; McKeown v. Coogler, 18 Fla. 866.

We have considered all the evidence in the record.

Many objections were made by both appellant and appellees to different portions of the evidence, but we can not consider the same for the reason that the record fails to show that any of the objections were presented to the chancellor and expressly ruled upon by him in the court below at or before the final hearing of the cause. Skinner v. Campbell, 44 Fla. 723, 33 South. Rep. 526; Stockton v. National Bank of Jacksonville, 45 Fla. 590, 34 South. Rep. 897; Pinney v. Pinney, *supra*.

It follows from what has been said that the decree must be reversed, with directions to enter a decree in accordance with this opinion, and it is so ordered; the appellees to pay the costs of this appeal.

WHITFIELD, C. J., and CARTER, J., concur.

TAYLOR, P. J., and HOCKER and COCKRELL, JJ., concur in the opinion.