H. W. METCALF COMPANY, A CORPORATION ORGANIZED, CREATED AND EXISTING UNDER AND BY VIRTUE OF THE LAWS OF THE STATE OF FLORIDA, *Appellant,* v. THE COUNTY OF ORANGE, IN THE STATE OF FLORIDA, H. H. DICKSON, H. H. CHAPPEL, J. H. LEE, H. K. FULLER AND L. W. FELDEN, AS COUNTY COMMISSIONERS OF THE COUNTY OF ORANGE, FLORIDA, *Appellees.*

1. Article XIX of the constitution provides that local option elections shall be conducted in the manner prescribed by law for holding general elections, and laws relating to such elections should conform to the constitution.

2. The ballot used in local option elections should conform as near as practicable to the form used in general elections.

3. Proceedings to test the legality and regularity of local option elections are under the statute by bill in equity filed for that purpose.

4. Allegations that the county commissioners wrongfully rejected and refused to count the vote as legally polled in a given precinct should be supported by allegations of facts to show a wrongful act causing the opposite results.

5. Allegations that certain named persons were duly registered voters, but were illegally not allowed to vote because they had not paid their poll taxes when none was due by them, are not sufficient to show illegal action in the absence of an allegation that the certificate required by the statute was produced to the precinct inspectors showing the persons were legally not required to pay a poll tax.

6. The effect of a demurrer is to admit the truth of all the facts that sufficiently appear by the bill of complaint, and to assert that in the particulars stated in the demurrer, the bill is insufficient to show a cause of action. While all facts necessary to be proven should be alleged it is sufficient if the ultimate facts be stated without details or the circumstances that are comprised within or that go to prove the ultimate facts.

7. Allegations of mere conclusions of law are not traversable, need not be alleged, and if alleged may be treated as surplusage, and they are not admitted by a demurrer, for the law is to be ascertained by the court. But all facts sufficiently alleged and the conclusions necessarily resulting from facts stated, are admitted by the demurrer.

8. Particular allegations of a bill of complaint should be construed with reference to other allegations of the bill to which they relate, and the full meaning and effect of the particular allegations may be thereby determined.

9. Allegations that certain named persons were allowed to vote when they were not qualified voters, and had not paid their poll taxes, though a poll tax was due from them as a condition precedent to the right to vote, when taken in connection with other allegations to which they relate, are sufficient as against a demurrer that facts have not been set up to show the persons were not entitled to vote.

This case was decided by the court En Banc.

Appeal from the Circuit Court for Orange County.

The facts in the case are stated in the opinion of the court.

*J. E. Hartridge* and *J. H. Jones,* for appellant;

*J. D. Beggs* and *L. G. Starbuck,* for appellees.

WHITFIELD, J.—This appeal is from an order sustaining a demurrer to a bill in equity filed in the Circuit Court for Orange County under section 1216 of the General Statutes to test the legality and regularity of a local option election.

The bill of complaint contains allegations in effect that pursuant to the statute, an election was held in Orange county, Florida, on October 8, 1907, to determine whether the sale of intoxicating liquors, wines and beer should be prohibited in said county, and that the County Commissioners on October 14, 1907, canvassed the returns and declared and certified that at said election 589 votes were cast "for selling" and 592 votes were cast "against selling"; that said election was illegal and void and in violation of the statute in that the ballot used was in form contrary to the statute, vague, indefinite and misleading, and that by reason thereof many ballots specifically stated were rejected as being improperly marked, depriving many voters of the privilege of expressing their choice; that the declared result of the election is not correct because the Board of County Commissioners wrongfully rejected and refused to count the vote as legally polled in Precinct number sixteen where there was a majority of one "for selling"; that upon the face of the returns authorized to be counted the declared result of the election should have been 590 "for selling" and 592 "against selling" instead of 589 "for selling"

and 592 "against selling" as declared by the Board of County Commissioners; that two persons authorized to vote at said election, and who would have voted "for selling" had they been allowed to vote, were refused the privilege of voting, and four other persons who were not authorized to vote and who were not legally qualified electors, were allowed to vote and voted "against selling" in this, that Henry Carroll who was exempt by law from the payment of a poll tax, and who was a duly registered voter endeavored to vote but was refused and not allowed to vote because he had not paid a poll tax, though under the law, he had been and was exempt, by reason of his age, from the payment of a poll tax, being at the time and prior thereto over sixty years of age, and that had he been allowed to vote, he would have voted "for selling"; that Richard Redmond, who was exempt by law from the payment of a poll tax and who was a duly registered voter endeavored to vote, but he was not allowed to vote because he had not paid a poll tax, though under the law, he was exempt from the payment of a poll tax being over sixty years of age, and had he been allowed to vote, he would have voted "for selling"; that H. T. Brown, Bryant Cox and W. W. Cox were allowed to vote, though they had not paid their poll tax or a poll tax and were not qualified voters, and that each voted "against selling"; that S. W. Goolsby was allowed to vote, though he was not a qualified voter, as he had never paid a poll tax, and the votes of each of said four persons were counted and made up the total of 592 votes "against selling" as declared by the County Commissioners, though a poll tax was due from the said S. W. Goolsby and from said H. L. Brown, Bryant Cox and W. W. Cox, as a condition precedent to being authorized to vote at said election, and that the said S. W. Goolsby, though not

authorized to vote, voted "against selling"; that James R. Altman was allowed to vote, but he was not a registered voter, and he voted "against selling"; that if the votes illegally polled had been rejected or the votes illegally rejected had been polled, the result would have been "for selling" instead of "against selling," as declared; that complainant is a resident and tax payer of the county and has been injured in a stated manner by the result improperly declared.

The prayer is that the election be adjudged illegal and void as contemplated by the statute. The bill was demurred to.

The constitution provides: "Article XIX. Local Option. Section 1. The board of county commissioners of each county in the state, not oftener than once in every two years, upon the application of one-fourth of the registered voters of any county, shall call and provide for an election in the county in which application is made, to decide whether the sale of intoxicating liquors, wines or beer shall be prohibited therein, the question to be determined by a majority vote of those voting at the election called under this section, which election shall be conducted in the manner prescribed by law for holding general elections; Provided, That intoxicating liquors, either spirituous, vinous, or malt, shall not be sold in any election district in which a majority vote was cast against the same at the said election. Elections under this section shall be held within sixty days from the time presenting said application, but if any such election should thereby take place within sixty days of any State or National election, it shall be held within sixty days after such State or National election. Section 2. The legislature shall provide necessary laws to carry out and enforce the provisions of section one of this article."

The statute designed to carry into effect this constitutional provision enacts that "for such election, electors may be registered as provided in the general law for registration for special elections, and they shall have the same qualifications for and prerequisites to voting as in elections under the general election laws." "The said election shall be held and conducted in the manner prescribed by law for holding general elections, except as herein provided," "at said election the ballot used shall be a plain white piece of paper, and having written or printed on one side thereof either 'for selling' or 'against selling.'" Sections 1210, 1211, 1214, General Statutes.

The constitution and the statute prescribe the qualifications of electors, and it is provided that certain designated classes of persons shall not be entitled to vote, among them being those "not duly registered according to law," and those "who shall have failed to pay at least on or before the second Saturday in the month preceding the day of such election, his poll taxes for the two years next preceding the year in which such election shall be held" provided no person shall be prevented from voting on account of being over fifty-five years of age, or under twenty-one years of age, or who has lost a limb in battle, or had not been in the state during the year or years for which the payment of the poll tax is required, and who shall have obtained from the supervisor of registration a certificate to that effect, and shall at the time of offering to vote exhibit such certificate to the inspectors of election. Section 170 Gen. Stats.; Art. VI Constitution.

The general election law provides that: "Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of each

VOL. 56, JUNE TERM, 1908.          835

H. W. Metcalf Co. v. Orange County *et al.*—Opinion of Court.

amendment or other public measure shall be twice in the same language indicated upon the ballot * * * followed in the one case by the word "yes" and in the other case by the word "no."

Section 2 of Article XIX of the constitution provides that: "The legislature shall provide necessary laws to carry out and enforce the provisions of section one of this article"; but as section one of the article specifies that the "election shall be conducted in the manner prescribed by law for holding general elections," the law enacted under section two of the article for conducting the election should conform to the requirements of section one of the article. If section 1214 of the General Statutes prescribing the form of ballot to be used in local option elections contemplates the use of two distinct ballots, one with "for selling" and the other "against selling" written or printed thereon, it is to that extent in conflict with the constitution, requiring the election to be conducted in the manner prescribed for holding general elections.

In so far as the words "for selling" and "against selling" contained in section 1214 of the General Statutes can be properly used in the form of the single ballot prescribed by the general election law, such use is apparently not forbidden at least if the words are not so used as to be misleading. Under this view the form of ballot used in this case with the words "for selling" and "against selling" above separate lines on one side of the same ballot with appropriate directions on the ballot for its use as contemplated by the general election law, does not now appear to be illegal, or vague, indefinite and misleading as charged.

The allegation that the county commissioners wrongfully rejected and refused to count the vote as legally

polled in precinct number sixteen, is not supported by allegations of facts to show a wrongful act causing opposite results.

The allegations that certain named persons, were duly registered voters, but were illegally not allowed to vote because, though no poll tax had been paid by them, none was due as they are over sixty years of age, are not sufficient to show illegal action in not allowing the persons to vote in the absence of an allegation that a certificate from the supervisor of registration was exhibited to the inspectors of election showing that no poll tax was due by the particular electors, because they were over age, as required by the statute prescribing the evidence to be used in such cases.

The effect of the demurrer is to admit the truth of all the facts that sufficiently appear by the bill of complaint, and to assert that in the particulars stated in the demurrer, the bill is insufficient to show a cause of action. All facts necessary to be proven should be alleged. It is sufficient if the ultimate facts be stated without the details or the circumstances that are comprised within or that go to prove the ultimate facts. Shipman on Eq. Pl., 323; St. Louis v. Knapp Co., 104 U. S. 658. See Camp v. Hall, 39 Fla. 535, 22 South. Rep. 792; 16 Cyc. 228.

Mere conclusions of law are not admitted by a demurrer, for the law is to be ascertained by the court; but all facts sufficiently alleged and the conclusions necessarily resulting from facts stated, are admitted by the demurrer. 16 Cyc. 278.

One of the specifications of the demurrer is, that the complainant has not set up facts to show that the parties named were not entitled to vote at the election.

The bill alleges in effect that four named persons, who were not qualified electors because they had not paid their

poll tax or a poll tax that was due by them severally as a condition precedent to their being authorized to vote at said election were permitted to vote and did vote "against selling" at the election. The allegations that the four persons were not qualified electors and that the payment of a poll tax was a condition precedent to the right to vote may be regarded as mere conclusions of law, yet there are allegations of ultimate facts that the four persons had not paid a poll tax and that a poll tax was due from them. These allegations should be construed with reference to others of the bill of complaint to which they relate.

Whether the payment of a poll tax was a prerequisite to the right to vote and whether the non-payment of a poll tax rendered the persons not qualified voters, are matters of law that will be applied to sufficient allegations of facts. Mere conclusions of law are not traversable, need not be alleged, and if alleged may be treated as surplusage. Gale v. Harby, 20 Fla. 171, text 203.

While the allegations designed to show that four named persons who voted at the election were legally not entitled to vote, may not be as full and specific as they should be, yet if the ultimate facts stated are true they show the illegality of four votes cast "against selling" at the election, since the law makes the payment of the poll tax due a prerequisite to voting and to the qualification of the elector. It is argued that it should have been alleged that the poll taxes were lawfully assessable against the four persons who voted without paying a poll tax, or that they owed poll taxes properly and legally assessed against them at the time of voting. The statute provides that no person shall be permitted to vote at an election who shall have *failed to pay* his poll taxes, pro-

838    SUPREME COURT OF FLORIDA,

H. W. Metcalf Co. v. Orange County *et al.*—Opinion of Court.

vided he shall not be prevented from voting for not paying a poll tax not lawfully assessable against him. The allegation that a poll tax was due taken with the context that it was a prerequisite to voting and was not paid is, at least as against the specifications of the demurrer, a sufficient allegation that a poll tax was lawfully assessable against the four named persons who voted "against selling" without paying a poll tax.

It is in effect alleged that the officially declared result of the election was 589 "for selling" and 592 "against selling," and that the four persons whose poll tax, though due as a condition precedent to voting, was not paid, did vote, and voted "against selling," and that their votes were so counted and included in the result as declared by the county commissioners, thus causing a result the opposite of the true and legal result of the election. All this is admitted by the demurrer. If the four votes were illegally cast and were cast "against selling," and were so included in the result, they should be deducted from the total of 592 cast "against selling," and the result would be 589 "for selling," and 588 "against selling." If this is the true result of the legal vote of the county as cast, the election was illegally and irregularly declared to have resulted "against selling," and the result of the election as declared by the county commissioners should be adjudged to be illegal and void as required by the statute. If James R. Altman was not a registered voter and voted, his vote was illegal, as persons not duly registered according to law are not qualified electors. Section 170 General Statutes.

What is decided here has no necessary application to other elections than those under the local option law and

reviewed under the statute by bill in equity. Questions of pleading not proofs are here dealt with.

The decree sustaining the demurrer to the bill of complaint is reversed, and the cause is remanded for further proceedings.

SHACKLEFORD, C. J., and TAYLOR AND HOCKER, JJ., concur.

COCKRELL, J., dissenting.

In my opinion the bill does not allege sufficient facts from which it follows as matter of law that the four named persons were liable to a poll tax the non-payment of which rendered them incapable of exercising their suffrage. When an attempt is made to set aside the action of quasi-judicial public officers, bound by an official oath, there should be a reasonably clear statement of such facts as would make their finding illegal; it should not be left to the conclusion of the pleader as to what might in his judgment, undisclosed to the court, constitute the illegality.

MR. JUSTICE PARKHILL, concurs in this dissent.