CAPITAL CITY BANK, A CORPORATION, *Appellant,* v. I. B. HILSON, *Appellee.*

1. A party cannot, either in the course of litigation or in deal-

ings *in pais,* occupy inconsistent positions.  Upon that rule election is founded.  A man shall not be allowed to approbate and reprobate.  And where a man has an election between several inconsistent courses of action, he will be confined to that which he first adopts.  The election, if made with knowledge of the facts, is in itself binding.  It cannot be withdrawn without due consent.  It cannot be withdrawn though it has not been acted upon by another by any change of position.

2.. Whether co-existent remedies are inconsistent is to be determined by a consideration of the relation of the parties with reference to the right to be enforced as asserted in the pleadings.

3. ˙ If in fact or in law only one remedy exists, and a mistaken remedy is pursued the proper remedy is not thereby waived. More than one remedy must actually exist.  The doctrine of election of remedies does not apply to a case where a party in his first action mistook his remedy.

4. The reversal of a judgment in an action at law in favor of a plaintiff upon a written contract on the ground that the declaration failed to state a cause of action and that the plaintiff could not recover against the defendant upon the contract as written leaves the case as if there had been no judgment.  Upon the going down of the mandate, the plaintiff is not precluded from filing his bill in equity for a reformation of such contract on the ground of mutual mistake. In such a case the doctrine of election of remedies does not apply.

5. A demurrer to the whole bill in equity operates as an admission that all such matters of fact as are well and sufficiently pleaded in the bill are true, though allegations of law are not admitted by the demurrer, for the law is to be ascertained by the court.

6. *An appellate court will take judicial notice of its own opinions and also of its own records, so far as they appertain to the case before it for consideration, but will not take judicial notice in deciding one case of what may be contained*

in the record of another and distinct case, unless it be brought to the attention of the court by being made a part of the record of the case under consideration.

7. A written contract cannot be reformed in an action at law. A court of equity must be resorted to for that purpose.

8. Where by inadvertence or otherwise a written contract is drafted and executed contrary to the intention of the parties thereto, a court of equity may in a proper case, upon the ground of mutual mistake, reform the contract so as to make it express the real agreement and intention of the parties, and as so reformed proceed to enforce such contract in order to do complete justice in the controversy. The right to the reformation of an instrument is not absolute, but depends upon an equitable showing.

Appealed from the Circuit Court for Leon County.

## STATEMENT.

On the 12th day of August, 1910, the appellee, as complainant, filed its bill in chancery, against the appellant, as defendant, which bill, omitting the formal parts thereof, is as follows:

"The bill of complainant I. B. Hilson, against the Capital City Bank, alleges:

1. That the complainant is an adult, and a citizen and a resident of the County of Santa Rosa, State of Florida.

2. That the defendant is a corporation, chartered, organized and doing business under the laws of the State of Florida, and having its principal place of business at Tallahassee, in the County of Leon, State of Florida.

3. That prior to the year 1905, the complainant was conducting the business of printing in the City of Tallahassee and in the City of Pensacola, said business embracing not only the operation of a general printing establish-

ment, but also the operation of two newspapers; one known as the Daily Capital, of Tallahassee, and the other, Daily News, of Pensacola.

4. That for the conduct of said business he contracted debts in his own name and on his own account as the purchase price of some portions of the plants belonging to the said businesses used in each of the said places, to-wit: Tallahassee and Pensacola, and in the operation of the said plants. Among said debts were debts for the purchase price of four (4) Mergenthaler Linotype Machines, two of which were bought for (and at the time of the agrement with defendant, hereafter mentioned, were in use in) the business at Pensacola, and two were bought for (and at said time were in use in) the business at Tallahassee. That among debts contracted by him, as aforesaid, were debts to the defendant.

5. That in the early part of the year A. D. 1905, complainant and one Robert Gamble, organized a corporation under the laws of the State of Florida, with a capital stock of fifty thousand ($50,000.00) dollars, and under the name and style of the Capital Publishing Company, for the purpose of consolidating the said business at Tallahassee and the property used therein with a printing and newspaper business and the property used therein, at Tallahassee, owned by the said Gamble, and known as 'The Tallahassean,' and upon the organization of the said corporation, the complainant turned over to the said corporation the said business and property in Tallahassee and received in exchange therefor, forty thousand ($40,-000.00) dollars par value of the stock of the said corporation; and the said Gamble turned over to the said corporation his said business and property, and received in exchange therefor eight thousand five hundred ($8,500,00) dollars, par value of the stock of the said corporation,

fifteen hundred ($1,500.00) dollars of the par value of the said stock being retained in the treasury of the said corporation. In the negotiations for the incorporation of the said company, it was agreed with the said Gamble that the complainant should pay the debts theretofore contracted by him in the purchase of the plant contributed as aforesaid by him to the said corporation, and in the operation thereof, using therefor the salary and dividends coming to him from the said corporation.

6. That the complainant continued his connection with such corporation as stockholder therein and president thereof, until the 29th, day of May, 1906, during which time he contracted debts in his own name and on his own account, and for which the said corporation was not liable except to him, although it received the benefit of the sums received or property purchased by the incurring of the said debts, and he also incurred some debts in the name of and for the benefit of the said corporation, for which it was liable.

7. That as aforesaid, among the debts incurred by him on his own account were large debts due to the defendant, which he was unable to pay, and which the defendant was desirous of having paid, and about the 29th, day of May, 1906, the defendant, through its president, George W. Saxon, opened negotiations with the complainant for the transfer to the defendant of the stock held by complainant aforesaid, and as the result of the said negotiations, it was agreed between the complainant and the defendant, that the defendant should pay to the complainant the sum of Forty Thousand ($40,000.00) dollars, the par value of the stock held by him in the said Capital Publishing Company, the said payment to be made by cancelling the said indebtedness contracted by the complainant to it, the defendant, and by the assumption and

subsequent payment by the defendant of certain specified obligations of the complainant, and of certain specified obligations of the Capital Publishing Company.

8. That in the said negotiations, and as the basis for the contract of sale of the said stock by complainant to defendant, and the assumption and payment by the defendant as aforesaid, the defendant required the complainant to make and deliver to him a statement of all the obligations, whether of the Capital Publishing Company, or of the complainant, or of the Capital Publishing Company and the complainant jointly, which were to be assumed by the defendant, and the complainant did so make and deliver to the defendant a statement of the said obligations, which were as follows:

|  |  |
|---|---|
| Towers Mfg. Co................about $ | 87.00 |
| S. P. Richards..................... | 125.00 |
| H. & W. B. Drew Co................ | 100.00 |
| Morning News .................... | 70.00 |
| Schoemaker & Co.................. | 125.00 |
| Cutter Rice & Co.................. | 425.00 |
| Mergenthaler Co. ................. | 6,500.00 |
| McDougall ........................ | 350.00 |
| Whitlock Printing Co.............. | 675.00 |
| Antietam Paper Co................ | 1,500.00 |
| Electric Co. ...................... | 176.00 |

explaining to the defendant that the amounts set forth in the statement were approximate, but substantially correct.

9. That in order that the understanding of the defendant should be evidenced in writing, the complainant demanded such writing and the defendant undertook the writing of same, and its president George W. Saxon per-

sonally wrote and presented to the complainant and un-derstanding in words and figures following, to-wit:

Capital City Bank,
(State Depository).
Branch at Apalachicola, Fla.

G. W. Saxon, President.

J. A. Ball, Vice-President.

T. S .Perkins, Cashier.

John M. Bell, Assistant Cashier.

Tallahassee, Fla., May 29th, 1906.

We hereby indemnify and release Mr. I. B. Hilson, from the following obligations of the Capital Publishing Co:

Towers Mfg. Co................about $    87.00
S. P. Richards......................    125.00
H. & W. B. Drew Co.................    100.00
Morning News .....................     70.00
Schoemaker & Co....................    125.00
Cutter Rice & Co....................    425.00
Mergenthaler Co. ...................  6,500.00
McDougall .........................    350.00
Whitlock Printing Co................    675.00
Antietam Paper Co...................  1,500.00
Electric Co. .......................    176.00

CAPITAL CITY BANK,
G. W. Saxon, President.

The complainant however upon reading same, objected thereto, because it did not bind the defendant to indem-nify and release the complainant from the obligations, which, as heretofore set forth, he, the complainant, had individually contracted, and for which he was individ-ually liable, and for which the Capital Publishing Com-

pany was not liable; and thereupon, the said G. W. Saxon, himself personally wrote in said instrument after the words: 'obligations of the Capital Publishing Company' the words: 'and himself personally' in order that, and intending thereby, that the said instrument should express the obligation agreed to by the defendant, that it should indemnify and release the complainant from the debts contracted and owed by him, individually, as well as those owed by the Capital Publishing Company individually, and those of the Capital Publishing Company jointly with complainant, and, having so written the said addition, he, the said Saxon, for the defendant, delivered the said instrument to the complainant; the said instrument so delivered to complainant being as follows:

Capital City Bank,
(State Depository.)
Branch at Apalachicola, Fla.

G. W. Saxon, President.
J. A. Ball, Vice-President.
T. S. Perkins, Cashier.
John M. Bell, Assistant Cashier.

Tallahassee, Fla., May 29, 1906.

We hereby indemnify and release Mr. I. B. Hilson, from the following obligations of the Capital Publishing Co., and himself personally.

| | |
|---|---|
| Towers Mfg. Co................about $ | 87.00 |
| S. P. Richards...................... | 125.00 |
| H. & W. B. Drew Co................. | 100.00 |
| Morning News ..................... | 70.00 |
| Schoemaker & Co................... | 125.00 |
| Cutter Rice & Co................... | 425.00 |
| Mergenthaler Co. .................. | 6,500.00 |
| McDougall ........................ | 350.00 |

Whitlock Printing Co...................    675.00
Antietam Paper Co...................  1,500.00
Electric Co. ......................,....    176.00

       CAPITAL CITY BANK,
        G. W. Saxon, President.

10. That the said instrument so delivered by the defendant to the complainant was intended to express and put in written form the contract of indemnify and release as made by the defendant, aforesaid, and that the defendant and the complainant both believed at the time of its execution and delivery that it did so express and put in writing the said contract.

That not only was the agreement of the defendant to indemnify and release the complainant against the said individual liabilities of the complainant a part of the consideration for the transfer of the stock aforesaid from complainant to defendant, but it was a large and important part of the consideration, for the largest part in amount of debts mentioned in the said instrument were not, at the time of the execution of the said instrument, and never had been, debts for which the complainant and the Capital Publishing Company were jointly liable; that the debts for which the complainant alone was individually liable were the following:

Mergenthaler Linotype Co..............  6,50.00
McDougall ........................    350.00
Whitlock Printing Co................    675.00
Antietam Paper Co..................  1,500.00

constituting $9,025.00, out of the total of $10,132.00 described in the said instrument. That the sole reason for mentioning the said individual debts of the complainant in said agrement was in order that the defendant might be required to indemnify and release the complainant from the liability thereof, and if the defendant were

not required to indemnify and release the complainant from the said individual obligations. it, the defendant would have escaped from the payment of a large part of the consideration for the said stock, and would have obtained same for $30,975.00, instead of $40,000.00, as agreed between the complainant and the defendant.

11. That after the making of the said agreement, the defendant paid all of the obligations embraced therein, including all of the individual obligations of the complainant, except a part of the indebtedness due by the complainant to the Merganthaler Linotype Company. Of this indebtedness the defendant paid $2,000.00, but it has not paid the remainder of the sum due to the said Mergenthaler Linotype Company, to-wit: the sum of $4,500.00; and has refused to pay the same; and that the said sum of $4,500.00 with interest to the present time remains wholly unpaid.

12. That upon the refusal of the defendant to pay the same, the complainant sued the defendant on the common law side of this court to recover the said sum so due, and that upon the trial of the said case before the said court complainant recovered a verdict against the defendant for the sum of $4,500.00, with interest, as aforesaid.

13. That in the said suit the defendant contended that the said instrument upon its face only bound the defendant to indemnify and release the complainant from the joint obligations of the complainant and the Capital Publishing Company, and upon a writ of error sued out to the Supreme Court of Florida by the defendant to review the said judgment, the said Supreme Court construed the said contract as written, to bind the defendant only to indemnify and release the complainant from such obligations as were the joint obligations of the Capital Publishing Company and of the complainant, and reversed the judgment.

14.  That the said court thereby decided that the complainant can not recover of the defendant for its failure to indemnify and release him from the debts due by him to the said Merganthaler Linotype Co., so long as the said written instrument remains as the written evidence of the contract between the complainant and the defendant, and that in order that the complainant may have the benefit of the contract as actually made with the defend ant, and may be able to recover the said sum of $4,500.00 and interest, it is necessary that the said instrument be reformed, so as to set forth truly the contract as made by the complainant and the defendant as aforesaid.

For as much therefore, as the complainant is without remedy, save in a court of Equity, and to the end that the defendant may, under its corporate seal, and to the best and utmost of its knowledge, rememberance, information and belief, full, true, direct and perfect answers make to the premises.  And that this Honorable Court may reform the said instrument executed and delivered as alleged herein by the defendant to the complainant so that it shall include an obligation of the defendant to indemnify and release the complainant from the individual obligations mentioned in said instrument, then owing by the complainant, including the indebtedness to the said Mergenthaler Linotype Company, and that as thus reformed, it may be enforced against the said defendant, and that the complainant may be decreed to have and recover of and from the defendant the sum of $4,500.00 with interest still unpaid by the defendant to the said Mergenthaler Linotype Company, or to the complainant. And that the complainant may have such other and further relief in the premises as may seem meet and just.

And the complainant prays process of subpoena to the defendant, the Capital City Bank, returnable according to

law and the course of this Honorable Court.

And complainant will ever pray."

To the bill the appellant interposed the following demurrer:

"Comes now the respondent, by its solicitors, and demurs to the bill of complaint herein, and as legal grounds of said demurrer says:

1. That the bill of complaint is without equity.

2. That the bill of complaint shows that the complainant has already elected his remedy under the contract therein mentioned, by prosecuting to final determination a suit at law.

3. That the bill of complaint shows that the subject matter thereof has already been adjudicated by a court of competent jurisdiction to hear the determine every point therein raised.

4. That the bill of complaint shows that the parties to the contract therein mentioned were thoroughly familiar with every word therein used, and that if any mistake was made, it was a mistake of the legal effect of the words, and not a mistake of any point of fact.

5. That the bill of complaint shows that the .contract therein mentioned was written and signed by the parties thereto as the final act of a long line of negotiations, which raises the presumption that all prior agreements were merged into it and expressed in its words, or that such prior agreements as were not so expressed were abrogated.

6. That the bill is multifarious, in that it seeks to enforce an obligation in a court of equity which is enforceable only in a court of law—thereby seeking to deprive the respondent of its right to have the issues of fact tried by a jury.

7. That since the subject matter of the bill of complaint has already been determined by the Circuit Court and Supreme Court, and since courts of law have full, perfect and complete jurisdiction to interpret contracts containing ambiguities of the kind contained in the contract set forth in the bill of complaint, whenever such contracts are submitted to them for enforcement, the complainant is precluded from seeking the relief prayed for in the bill of complaint; for the reason that the point submitted by the bill is presumed to have been fully passed upon by a branch of the judiciary which not only had ample but complete jurisdiction to make inquiry and interpretations, and to construe words and phrases in the light of the surroundings and relations in which they were used, but which also had ample means of ascertaining all the relevant facts with reference to the dealings, relations and intentions of the parties.

Wherefore, the respondent prays the judgment of the court whether it ought to be required to specifically answer the allegations of said bill of complaint."

Upon this demurrer the following order was made:

"This cause coming on to be heard on the demurrer of the defendant to the complainant's bill, and having been argued by counsel for the respective parties, it is thereupon considered, adjudged and decreed that the said demurrer be and the same is hereby overruled, and the defendant is hereby allowed until the first Monday in May next to answer.

Done, ordered and decreed at Apalachicola, Florida, this the first day of April, A. D. 1912."

From this order the defendant has appealed.

*John L. Neeley,* for the Appellant.

*W. A. Blount* and *F. T. Myers,* for Appellee.

SHACKLEFORD, J.—(*After stating the facts*).—The only question we are called upon to answer on this appeal is, did the trial judge err in overruling the demurrer to the bill? In answering this question, we shall discuss only such points as seem to us to be necessary for a proper disposition of the case.

It is strenuously urged by the appellant that the appellee is precluded from maintaining this suit for the reason that, as is shown by the allegations in the bill, he brought an action at law against the appellant and recovered judgment upon the contract which he seeks by this suit to have reformed and to obtain relief by recovering such amount thereon to which he may establish by evidence that he is entitled. In other words, the doctrine of election of remedies is invoked, and the following authorities are cited in support of this contention: Campbell v. Kauffman Milling Co., 42 Fla. 328, 29 South. Rep. 435; Washburn v. Great Western Insurance Co., 114 Mass. 175; Thomas v. Joslin, 36 Minn. 1; Lansing v. Commercial Union Assurance Co., 4 Neb. (Unof.) 140, 93 N. W. Rep. 756; 15 Cyc. 259. We shall not undertake a critical analysis of these cited authorities. We have no especial fault to find with their statement of the general doctrine concerning the election of remedies. In Campbell v. Kauffman Milling Co., *supra,* we adopted the following rule from Bigelow on Estoppel: "A party cannot, either in the course of litigation or in dealings *in pias,* occupy inconsistent positions. Upon that rule election is founded. A man shall not be allowed to approbate and reprobate. And where a man has an election between several inconsistent courses of action, he will be confined to that which he first adopts. The election, if made with knowledge of the facts, is in itself binding. It cannot be withdrawn without due consent. It cannot

be withdrawn, though it has not been acted upon by another by any change of position." This rule has been recognized, approved and followed in several subsequent opinions. See Ocala Foundry & Machine Works v. Lester, 49 Fla. 347, 38 South. Rep. 56; American Process Co. v. Florida White Pressed Brick Co., 56 Fla. 116, 47 South. Rep. 942, 16 Ann. Cas. 1054; Hays .v. Weeks, 57 Fla. 73, 48 South. Rep. 997; Malsby v. Gamble, 63 Fla. 508, 57 South. Rep. 687. The difficulty is not with the rule, but with its application to the facts as they are presented in a particular case. As we held in American Process Co. v. Florida White Pressed Brick Co., *supra*. "Whether co-existent remedies are inconsistent is to be determined by a consideration of the relation of the parties with reference to the right sought to be enforced as asserted in the pleadings." We held in Hays v. Weeks, *supra,* that, "If in fact or in law only one remedy exists, and a mistaken remedy is pursued, the proper remedy is not thereby waived. More than one remedy must actually exist," and further held in Malsby v. Gamble, *supra,* that "The doctrine of election of remedies does not apply to a case where a party in his first action mistook his remedy." As is laid down in 16 Cyc. 259, "The prosecution of one remedial right to judgment or decree, whether the judgment or decree is for or against the plaintiff, is a decisive act which constitutes a conclusive election, barring the subsequent prosecution of inconsistent remedial rights." If the judgment rendered in favor of the plaintiff, who is the appellee here, in the action at law brought by him against the appellee still remained in full force and effect, undoubtedly the doctrine of election of remedies as enunciated in the cited authorities would apply and be decisive of the point. Unfortunately, for the contention of the appellant, it appears from

the allegations of the bill that the defendant in the action at law brought such judgment so rendered against it to this court for review by writ of error, and a decision was rendered by this court whereby such judgment was reversed, by reason whereof the judgment so rendered by the Circuit Court no longer exists. As was held in Hillerich v. Franklin Insurance Co., 23 Ky. L. Rep. 631, 63 S. W. Rep. 592, "The reversal of a judgment in favor of plaintiff upon a policy of fire insurance on the ground that the policy as written did not embrace the property destroyed, leaves the case as if there had been no judgment, and plaintiff may then amend his petition, and seek a reformation of the policy on the ground of mistake, so as to make it include the destroyed property, as the mere assertion of a claim on the policy as written on the ground that it already embraced the property was not a conclusive election of remedy so as to preclude plaintiff from seeking relief on the ground of mistake." This will be found to be quite an instructive case and well in point. We would call attention to the fact that the demurrer interposed in the instant case is to the whole bill, and, therefore, operates as an admission that all such matters of fact as are well and sufficiently pleaded in the bill are true, though allegations of mere conclusions of law are not admitted by the demurrer, for the law is to be ascertained by the court. See Brown v. Avery, 63 Fla. 355, 58 South. Rep. 34; Lindsley v. McIver, 51 Fla. 463, 40 South. Rep. 619; McClinton v. Chapin, 54 Fla. 510, 45 South. Rep. 35, 14 Ann. Cas. 365; H. W. Metcalf Co. v. Orange County, 56 Fla. 829, 47 South. Rep. 363. We do not copy here the allegations of the bill upon this point for the reason that we have copied the bill in full in the statement which precedes this opinion. In addition to the direct and positive allegations in the bill, this court

will take judicial notice of its own records, so far as they appertain to the case before it for consideration, but will not take judicial notice in deciding one case of what may be contained in the record of another and distinct case, unless it be brought to the attention of the court by being made a part of the record of the case under consideration, McNish v. State, 47 Fla. 69, 36 South. Rep. 176. As we have further held, an appellate court will take judicial notice of its own opinions. McKinnon v. Johnson, 57 Fla. 120, 48 South. Rep. 910. In the instant case the decision rendered by this court upon the judgment recovered by the plaintiff against the defendant in the action at law, Capital City Bank v. Hilson, 59 Fla. 245, 51 South. Rep. 853, is directly brought to our attention by the allegations in the bill. Turning to the opinion which we rendered in that case, we find that we held therein that the declaration failed to state a cause of action and that the plaintiff could not recover against the defendant upon the written contract set forth in the declaration. Upon this ground and for the reasons set forth in connection therewith in the opinion the judgment which the plaintiff had recovered was reversed. Was this such a determination upon the merits as to preclude the plaintiff from filing a bill in equity for the purpose of having the contract as actually made by the parties reformed upon the ground of mutual mistake? We do not think so. There is a strong analogy between the instant case and the case of Hillerich v. Franklin Insurance Co., *supra.* See especially the distinction drawn therein between the facts in that case and those in Thomas v. Joslin, 36 Minn. 1. See also the reasoning in Spurr v. Home Ins. Co., 40 Minn. 424, 42 N. W. Rep. 206, wherein the case of Thomas v. Joslin is distinguished. We are constrained to hold that the doctrine of election of remedies does not apply in

the instant case and that upon the going down of the mandate from this court reversing the judgment recovered by the plaintiff in the action at law he was not precluded from bringing his bill in equity for a reformation of the contract. As to whether or not the action at law is still pending or has been dismissed by the plaintiff the transcript of the record is silent. We do not see wherein that is material. If still pending, the plaintiff still could file his bill in equity for a reformation of the contract, though he might, upon a proper showing to the court, be required to elect which suit or action he will prosecute to a final decree or judgment. Sanford v. Wright, 164 Mass. 85, 41 N. E. Rep. 120; Fleming v. Courtenay, 95 Me. 135, 49 Atl. Rep. 614; Cleveland v. Lyne, 5 Bush. (Ky.) 383; Dunlap v. Newman, 52 Ala. 178. He could not have the contract reformed in his action at law, but would have to resort to a court of equity for that purpose. Taylor v. Glens Falls Insurance Co., 44 Fla. 273, 32 South. Rep. 887. Florida Home Insurance Co. v. Bozeman, 58 Fla. 424, 50 South. Rep. 413, is in point. In that case an action at law had been brought upon an insurance policy, not as such policy was actually written, but as the plaintiff claimed it should have been written. While such action was still pending, the plaintiff filed his bill in equity for a reformation of such policy. The defendant filed a plea to the bill, wherein he invoked the doctrine of election of remedies. The trial court overruled the plea and we affirmed such ruling, saying: "We do not think that there is any inconsistency between the two suits under discussion, but on the contrary that they are prefectly consistent with each other, the equity suit for reformation of the contract sued upon in the suit at law being ancillary to and in aid of the latter." Also see to the same effect Lansing v. Commercial Union Assurance Co., 4 Nebraska (Unofficial)

140, 93 N. W. Rep. 756, to which we referred with approval in Florida Home Insurance Co. v. Bozeman, *supra*. This case was also cited to us by the appellant, as we said above. We held in Phenix Insurance Co. v. Hilliard, 59 Fla. 590, 52 South. Rep. 799, 138 Amer. St. Rep. 171, that, "Where by inadvertence or otherwise a policy of fire insurance is issued contrary to the intention of the parties thereto, a court of equity may in a proper case reform the policy so as to make it express the real agreement and intention of the parties, and as so reformed to enforce the policy in order to do complete justice in the controversy." This doctrine is not confined to or peculiarly applicable to policies of insurance, but applies with like force to such a contract as the one under consideration in the instant case. We further held in the cited case that "The right to the reformation of an instrument is not absolute, but depends on an equitable showing."

We must now determine whether such an equitable showing has been made in the bill now under consideration as to withstand the attack made upon it by the demurrer. We have had occasion several times to consider what showing must be made in order to warrant a court of equity granting a reformation of a contract. See Horne v. J. C. Turner Cypress Lumber Co., 55 Fla. 690, 45 South. Rep. 1016, and Jacobs v. Parodi, 50 Fla. 541, 39 South. Rep. 833, and the prior decisions of this court cited therein. Also see Robinson Point Lumber Co. v. Johnson, 63 Fla. 562, 58 South. Rep. 841. We would also refer to the authorities bearing upon this point cited by the writer hereof in his dissenting opinion in Crosby v. Andrews, 61 Fla. 554, text 578, *et. seq.*, 55 South. Rep. 57, text 64 *et. seq.* It is unnecessary for us to enter upon any extended discussion of this point. As we held in Jacobs v. Parodi, *supra*, "Where an agreement has been

Capital City Bank v. Hilson—Opinion of Court.

actually entered into, but the contract, deed or other instrument, in its written form, does not express what was really intended by the parties thereto, equity has jurisdiction to reform the written instrument so as to make it conform to the intention, agreement and understanding of all the parties." The reasoning in this case, as also the authorities cited therein, will be found to throw much light upon the question we are now considering. Reading the allegations in the bill concerning the mutuality of the mistake, which are admitted by the demurrer to be true, we are impelled to the conclusion that they measure up to the requirements laid down by us in the cases which we have cited. We are dealing only with the bill and the demurrer. As to what the evidence may establish we have no information. It is incumbent upon the complainant to prove the allegations of his bill. We are simply holding now that such allegations are sufficiently full and satisfactory to withstand the attack made on them by the demurrer.

A court of equity having assumed jurisdiction for the purpose of reforming the written contract, may retain jurisdiction and proceed to enforce the contract after its reformation, so that full and complete justice may be administered. Phenix Insurance Co. v. Hilliard, 59 Fla. 590, 52 South. Rep. 799, 138 Amer. St. Rep. 171. See also Doggett v. Hart, 5 Fla. 215, 58 Amer. Dec. 464; El Modello Cigar Mfg. Co. v. Gato, 25 Fla. 886, text 913, 7 South. Rep. 23, text 28, 23 Amer. St. Rep. 537, 6 L. R. A. 823; Hefner v. Northwestern Mut. Life Insurance Co., 123 U. S. 747, 8 Sup. Ct. Rep. 337; 16 Cyc. 106; Sarasota Ice, Fish & Power Co. v. Lyle, 53 Fla. 1069, text 1074, 43 South. Rep. 602, text 603.

It necssarily follows from what we have said that the order overruling the demurrer must be affirmed.

WHITFIELD, C. J., and COCKRELL and HOCKER, J. J., concur.

TAYLOR, J., absent on account of illness, concurred in the opinion as prepared.